INTERNA:
05-1058'

UNITED :
    Pl;

    v.

BERT DOl
    De:

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FILED
Clerk
Dist ct Court

SEP 28 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br>v.<br>BERT DOUGLAS MONTGOMERY,<br>    *Defendant-Appellant.* | No. 05-10587<br>D.C. No.<br>CR-02-00010-ARM<br>OPINION |

Appeal from the United States District Court
for the Northern Mariana Islands
Alex R. Munson, Chief District Judge, Presiding

Argued and Submitted
June 15, 2006—Honolulu, Hawaii

Filed August 29, 2006

Before: Betty B. Fletcher, Harry Pregerson, and
William C. Canby, Jr., Circuit Judges.

Opinion by Judge Pregerson

---

## SUMMARY

### Criminal Law and Procedure/Sentencing

    The court of appeals remanded a judgment of the district court. The court held that its decision in *Ameline* requires the district court to obtain the views of counsel, at least in writing, before it decides whether *Ameline* re-sentencing is warranted.

10429

Appellant Bert Montgomery was convicted in district court in Hawaii of crimes including wire fraud and was sentenced under the then-mandatory sentencing guidelines to 240 months in prison. On appeal, the court of appeals affirmed Montgomery's conviction, but, because the district court had sentenced Montgomery under the mandatory guidelines scheme, found non-constitutional error and remanded under *Ameline*. The court of appeals instructed the district court, on limited *Ameline* remand, to determine whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory. On remand, the district court, without receiving any input from counsel, issued an order denying re-sentencing.

Montgomery appealed his sentence, challenging the failure of the court to seek the views of counsel on whether re-sentencing was appropriate.

[1] In *Ameline*, the Ninth Circuit laid out the procedure to be followed on *Ameline* remand, stating that, on this limited remand, the "views of counsel, at least in writing," should be obtained. [2] Use of the word "should" is not unambiguous and had to be read in context. Read in context, *Ameline* requires, at a minimum, that the district court obtain, or at least call for, the views of counsel in writing before deciding whether re-sentencing is necessary. [3] The "at least" language referred to a holding that the district court (a) was not required to hold an in-court hearing, under Federal Rule of Criminal Procedure 43(b), but (b) should "at least" obtain the views of counsel. Reading the two statements together indicated that, while holding a hearing is optional, obtaining written submissions is mandatory. [4] The court of appeals therefore made explicit that *Ameline* requires that the views of counsel, at least in writing, be obtained before the district court decides whether re-sentencing is warranted.

[5] The first time Montgomery's case was heard by the court of appeals, the panel remanded under *Ameline* and

incorporated *Ameline*'s instructions as part of the court's mandate. [6] A district court, on remand, has a duty to follow the court of appeals' instructions as to how the case is to proceed. Failure to follow the court of appeals' instructions on remand is grounds for the case to be re-remanded for compliance with the instructions. Thus, Montgomery's case had to be remanded for compliance with *Ameline*.

## COUNSEL

G. Anthony Long, Esquire, Saipan, MP, for the defendant-appellant.

Timothy E. Moran, Assistant United States Attorney, Saipan, MP, for the plaintiff-appellee.

## OPINION

PREGERSON, Circuit Judge:

On limited remand pursuant to *United States v. Ameline*, 409 F.3d 1073, 1085 (9th Cir. 2005) (en banc), the district court did not "obtain the views of counsel" before it decided not to re-sentence Appellant Bert Montgomery. Montgomery argues that the district court, in not obtaining the views of counsel, did not comply with the instructions laid down in *Ameline*. We have jurisdiction under 28 U.S.C. § 1291. We hold that our decision in *Ameline* requires the district court to obtain the views of counsel before it decides whether *Ameline* re-sentencing is warranted. Because the district court did not do so, we remand Montgomery's case for a second time.

### I. Factual Background

Bert Montgomery was involved in a complex fraud scheme that led to the temporary closing of the Bank of Saipan and

millions of dollars of loss. Montgomery, along with his business partner DuSean Berkich, endeavored to purchase a controlling interest in the Bank of Saipan. To accomplish this, they convinced Tomas Aldan, the CEO and Chairman of the Board of the Bank of Saipan, to serve as their "inside man" by promising him lucrative benefits and kickbacks. The three then attempted, by various fraudulent means, to acquire Bank of Saipan stock. Montgomery's fraud resulted in a loss of over five million dollars to the Bank of Saipan. As a result of the fraud, the Bank of Saipan was temporarily closed and was placed in receivership, a scandal that was highly publicized in Saipan. As Montgomery acknowledges in his brief, the actions of Montgomery and his co-conspirators are alleged to have disrupted "banking and business operations in the Commonwealth . . . and the region in general."

On June 20, 2003, a jury convicted Montgomery of: three counts of wire fraud and conspiracy to commit wire fraud; one count of deprivation of honest services; and four counts of money laundering. The district court accepted the recommendation of the presentence report ("PSR") and assigned Montgomery a Guidelines offense level of 38. The district court rejected Montgomery's objections to several of the upward departures recommended by the PSR, and found that Montgomery's age and health did not provide a basis for a downward departure. The Guidelines sentencing range was 235 to 293 months, and the district court settled on a 240-month sentence, a sentence near the low end of the range.

Montgomery appealed to this court. In a memorandum disposition, a panel of this court affirmed Montgomery's conviction. *See United States v. Montgomery*, 143 Fed. Appx. 757, 759, 2005 WL 1793392, at *1 (9th Cir. July 27, 2005) (D.W. Nelson, Kozinski, Bea). Because the district court had sentenced Montgomery under the mandatory Guidelines scheme, the panel found non-constitutional error and remanded under *Ameline*, 409 F.3d at 1074. *See Montgomery*, 143 Fed. Appx. at 760. The panel instructed the district court, on limited *Ame-*

*line* remand, to determine " 'whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory.' " *Id.* (quoting *Ameline*, 409 F.3d at 1074).

On August 25, 2005, the district court received the certified judgment of this court. On August 29, 2005 — only four days later and without receiving any input from counsel — the district court issued an order denying re-sentencing. The court stated that it had "reviewed the court file, the presentence report, and the sentence imposed upon defendant, and also ha[d] an independent recollection of the salient facts of this jury trial." The court declined to alter Montgomery's sentence because:

> Th[e] defendant's primary role in the intentional fraud perpetrated on the Bank of Saipan resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all of whom lost access to their savings. The indirect injury caused to the families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002. The cold, calculating nature of the crime and the financial losses and inconvenience caused to so many victims warranted the sentence imposed.

Montgomery filed a timely appeal. He challenges three issues regarding his sentence: (1) the failure of the court to seek the views of counsel on whether re-sentencing was appropriate; (2) the district court's calculation of the Guidelines range; and (3) the ultimate "reasonableness" of his sentence. We find reversible error on the first issue, and thus remand.

## II. Discussion

In our en banc decision in *Ameline*, we outlined the limited remand procedure to be used where *Booker* error had not been

preserved and where the district court sentenced a defendant under the mandatory Guidelines scheme. Under *Ameline*, the reviewing court, applying the plain error standard of review, is to determine whether it was clear from the district court record that the sentence would have been materially different if the district court had known that the Guidelines were advisory. *See Ameline*, 409 F.3d at 1084. If the record is not clear on this point, then we are required to remand the case for the district court to answer that question. *See id.*

[1] We also laid out "the procedure to be followed" on *Ameline* remand: we stated that, on this limited remand, "the 'views of counsel, at least in writing,' should be obtained." *Ameline*, 409 F.3d at 1085 (citing *United States v. Crosby*, 397 F.3d 103, 120 (2d Cir. 2005)). Many district courts in this circuit have read the quoted statement as a requirement. *See, e.g., United States v. Wold*, 2006 WL 1638638, at *1 (W.D. Wash. June 2, 2006) ("In accord with the limited remand procedures adopted in *Ameline*, the parties have submitted supplemental pleadings.").[1] We now explicitly restate what *Ameline* requires: that, on *Ameline* remand, a district court must obtain, or at least solicit, the views of counsel in writing before deciding whether re-sentencing is appropriate.

There are several reasons why obtaining the views of counsel was intended to be read as a requirement, not a suggestion.

---

[1] Like much of *Ameline*'s procedure, this directive was adopted from the Second Circuit's procedure for *Booker* pipeline cases. District courts in the Second Circuit have likewise solicited the counsels' views prior to re-sentencing. *See, e.g., United States v. Perez*, 2006 WL 482557, at *1 (2d Cir. March 1, 2006) (unpublished) (holding that the district court, by receiving letter briefs from both parties, had "fulfilled its responsibilities under *Crosby*"); *United States v. Salvagno*, 375 F. Supp. 2d 117, 119-20 (N.D.N.Y. 2005) (ordering "in conformity with *Crosby*" that the parties submit their views on re-sentencing); *United States v. Jasper*, 2005 WL 2414547, at *1 (S.D.N.Y. Sept. 29, 2005) (explaining that, "pursuant to *Crosby*," the court decided whether to re-sentence defendant after obtaining counsels' views).

UNITED STATES v. MONTGOMERY          10435

But we first dispose of the government's argument that "should" is a permissive term. The government is correct that the term "should" often connotes a strong suggestion, not a requirement. *See Seltzer v. Chesley*, 512 F.2d 1030, 1033 (9th Cir. 1975) (construing "should" as a permissive, not a mandatory, word); *see also* Funk & Wagnall's New Standard Dictionary of the English Language 2263 (1937) (defining "should" as "obligation in various degrees, usually milder than 'ought' "). Courts, however, do not always interpret "should" as permissive. *See, e.g., United States v. Smith*, 282 F.3d 1045, 1047-48 (8th Cir. 2002) (discussing circuit split over whether "should" in a particular section of the Sentencing Guidelines was mandatory or permissive); *McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 346 n.6 (8th Cir. 1985) (noting that "should" is inconclusive); *Bord v. Rubin*, 1998 WL 420777, at *4 (S.D.N.Y. July 27, 1998) (concluding, after lengthy review of cases interpreting "should," that "use of the word 'should' does not automatically denote either a mandatory or a permissive direction. Rather, the meaning depends on the context in which the words are found.").[2]

[2] Indeed, the Seventh Circuit has interpreted *Crosby*'s statement that the district court "should" create a record explaining its decision not to re-sentence as a mandatory requirement. *See United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005) ("By 'should' in the quoted passage [of *Crosby*] we understand 'must.' "). In *Crosby*, the statement that the district court "should" create a record immediately follows the statement that the district court "should" obtain the views of counsel. Thus, contrary to the government's argument, use of the word "should" is not unambiguous and must be read in context. Read in context, *Ameline* requires, at

---

[2]A court might be especially disposed to use "should" as gentler way for one court to tell another court what it ought to do. *Cf. United States v. Anderson*, 798 F.2d 919, 924 (7th Cir. 1986) (interpreting a judicial cannon defining what a judge "should" do as a mandatory requirement).

a minimum, that the district court obtain, or at least call for, the views of counsel in writing before deciding whether re-sentencing is necessary.

[3] First, in *Ameline*, we stated that the views of counsel "*at least* in writing" should be obtained. 409 F.3d at 1085 (emphasis added). This "at least" language is taken from *Crosby* and refers to *Crosby*'s holding that the district court (a) was not required to hold an in-court hearing, under Federal Rule of Criminal Procedure 43(b), but (b) should "at least" obtain the views of counsel. Reading the two statements from *Crosby* together indicates that, while holding a hearing is optional, obtaining written submissions is mandatory.

The rest of the opinion bears out this reading. In footnote 10, *Ameline* states that if the parties and the district court agree that re-sentencing is necessary, the "*need* for submissions by counsel" could be dispensed with. *Ameline*, 409 F.3d at 1085 n.10 (emphasis added). This wording implies that, in the absence of such an agreement, submissions by counsel are necessary.

This interpretation also comports with the understanding of the *Ameline* dissenters. *See id.* at 1093, 1095 n.5 (Wardlaw, J., dissenting) (asserting that the "[b]riefs of counsel are not a substitute for testimony, evidence, and argument"; noting that, in the Second Circuit, courts were electing to use briefing instead of hearings); *id.* at 1108 (Gould, J., dissenting) ("Under the limited remand approach, a district court will *have to* 'obtain the views of counsel' ") (emphasis added); *id.* at 1110 (Gould, J., dissenting) (arguing that the majority's plan of "*[r]equiring* the district court to obtain the views of counsel in writing" was not sufficient under *Booker*).

Going beyond the text of *Ameline*, we believe it is clear that allowing the parties to file written submissions is most consistent with the procedure laid down in *Ameline*, and indeed, is necessary for the district court to meaningfully comply with

*Ameline*'s remand procedure. First, the parties are likely to have useful input on this question. On *Ameline* remand, the district court is asked to consider whether non-Guidelines factors might have justified a sentence different from the one imposed if, at the time of sentencing, the court's discretion had not been constrained by the mandatory Guidelines. Before *Booker*, certain circumstances would warrant departure only if they were present to a degree not adequately taken into consideration under the Guidelines. *See* 18 U.S.C. § 3553(b)(1). Under the advisory Guidelines the district court can, in *every* case, consider factors that were either discouraged or outright prohibited pre-*Booker*. *See Ameline*, 409 F.3d at 1093 (Wardlaw, J., dissenting). Thus, there may be considerations that were either not presented or not emphasized during the original sentencing procedure that now, under *Ameline*, provide a basis for re-sentencing. Unless these factors are called to the district court's attention through written submission, the district court cannot faithfully fulfill its mandate under *Ameline*.

Second, such briefing would assure this court that the district court had considered those factors that the parties deem relevant and would assist this court in conducting its reasonableness review. The district court that decides not to re-sentence on *Ameline* remand is required to explain its decision not to re-sentence. *See id.* at 1085. But because the district court is not required to enumerate each § 3553(a) factor in its decision, *see United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006), it would be difficult for this court to determine whether the district court found certain facts irrelevant to whether re-sentencing was warranted, or whether it simply overlooked facts that might now be relevant under § 3553(a). The arguments of counsel might help to train the district court's analysis on those facts — out of the wide universe of possibilities under § 3553(a) — that the parties deem relevant. This, in turn, greatly facilitates this court's review.

Indeed, without such a requirement, we are likely to encounter a multiplicity of remands. As we explained, where

counsel's views are obtained, the district court is more likely to address the § 3553(a) factors that the parties deem relevant, and to explain why they were or were not persuasive. But if counsel's first opportunity to raise these factors is before *this* court, it will be nearly impossible for us to determine whether such factors would have affected the district court's broad discretion to re-sentence, and we will have to remand the case again for consideration of such factors.

[4] Requiring that district courts obtain the views of counsel is a de minimis requirement that many district judges appear to be doing already, if only to ease their own burden of scouring the record for reasons that might be relevant to the re-sentencing inquiry. We believe that treating *Ameline*'s statement that counsel's views "should" be obtained as a requirement best fits "the letter and the spirit" of *Ameline*. See *Vizcaino v. U.S. Dist. Court for the W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999) (citations omitted). We therefore make explicit that *Ameline* requires that the views of counsel, at least in writing, be obtained before the district court decides whether re-sentencing is warranted.

[5] As the *Ameline* court recognized, we may remand "with such instructions as the court considers appropriate." *Ameline*, 409 F.3d at 1083 n.5 (citing *Crosby*, 397 F.3d at 117). Pursuant to this authority, the *Ameline* court dedicated an entire section of its opinion to the "process to be followed" on *Ameline* remand. *Id.* at 1084. The first time Montgomery's case was heard by our court, the panel remanded under *Ameline* and incorporated *Ameline*'s instructions as part of the court's mandate. See *Fed. Home Loan Bank v. Hall*, 225 F.2d 349, 371 n.10 (9th Cir. 1955) (holding that "where an appellate court in its mandate prescribes that the lower court should 'proceed in accordance with the opinion,' this pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length" (citations omitted)).

UNITED STATES v. MONTGOMERY            10439

[6] A district court, on remand, has a duty to follow this court's instructions as to how the case is to proceed. *See Vizcaino*, 173 F.3d at 719. The court " 'must implement both "the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." ' " *Id.* (citations omitted). Failure to follow this court's instructions on remand is grounds for the case to be re-remanded for compliance with our instructions. *See United States v. Atondo-Santos*, 385 F.3d 1199, 1200 (9th Cir. 2004) (noting that case had been remanded multiple times for failure to comply with this court's mandate); *see also Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990) (remanding with clarified instruction where district court misunderstood the appellate court's original remand instructions). We therefore remand for compliance with *Ameline*.[3]

### III. Conclusion

For the foregoing reasons, we REMAND to the district court for compliance with the procedures set forth in *Ameline*.[4]

---

[3] It has been suggested that the error in failing to obtain counsel's views on *Ameline* remand might be subject to harmless error review. Although the *en masse* nature of the *Ameline* remand presents a unique situation, we nonetheless believe that failure to comply with *Ameline*'s requirements is best viewed as a failure to comply with the instructions on the scope of remand. We have never held that the failure to follow instructions on remand might be subject to inquiry into the harmlessness of that error, and we refuse to do so here.

[4] So that our own instructions are clear, neither this panel nor the previous one passed on the correctness of the district court's calculation of the Guidelines. When, inevitably, this case returns on "reasonableness" review, it is still an open question whether the district court properly calculated Montgomery's sentence.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted © 2006 Thomson/West.