Law Office of G. Anthony Long
P. O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Tel No. (670) 235-4802
Fax No. (670) 235-4801

Attorney for Defendant Montgomery

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL CASE NO. 02-00010 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | MEMORANDUM SUPPORTING |
| | ) | RE-SENTENCING |
| BERT DOUGLAS MONTGOMERY | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005) changed the landscape of federal sentencing. *Booker* reduced the sentencing guidelines from a mandatory to an advisory regime. This shift in regime requires federal courts to consider all of the 18 U.S.C. § 3553 factors in imposing sentence. The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kind of sentence and the sentencing range provided for by the Sentencing Guidelines; (5) any pertinent policy statement

issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *United States v. Clark*, 452 F.3d 1082, 1085 (9th Cir. 2006). This re-structuring of federal sentencing opens the "wide universe of possibilities under § 3553(a)" that a party may deem relevant for consideration in imposing a sentence. Under the now advisory guidelines and "wide universe of possibilities" of relevant sentencing considerations, courts can consider factors that were either discouraged or outright prohibited by the Guidelines. *United States v. Montgomery*, 462 F.3d 1067, 1071 (9th Cir. 2006).

In this remand, *Montgomery* is required to present his arguments as to why re-sentencing is appropriate in light of *Booker*. As shown below, Montgomery is entitled to re-sentencing.

I.  **NON-GUIDELINE FACTORS JUSTIFY RE-SENTENCING**

A.  **MONTGOMERY'S CHARACTERISTICS WARRANT A BELOW GUIDELINE SENTENCE**

The personal history and characteristics of the defendant are proper § 3553(a) factors. *United States v. Ameline*, 409 F.3d 1073, 1112 n.2 (9th Cir. 2005)( Bea, J, concurring in part and dissenting in part). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Id quoting 18 U.S.C. § 3661.

1.     **MONTGOMERY'S AGE**

Age is an appropriate § 3553 consideration in imposing sentence. *Ameline*, 409 F.3d at 1112 n.2 ( Bea, J, concurring in part and dissenting in part). *See United States v. Whipple*, 414 F.3d 887, 890 - 891 (8th Cir. 2005). Indeed, after *Booke*r, courts have recognized that recidivism is markedly lower for defendants over forty and accordingly have imposed sentences lower than the Guideline range based, primarily on the defendant's age. *United States v. Lucania,* 379 F.Supp.2d 288, 298 (E.D.N.Y.,2005) [Guidelines do not take into account the inverse relationship between age and recidivism]. *See also United States v. Hernandez*, 2005 WL 1242344 at 5 (S.D.N.Y. May 24, 2005)["This court and others have previously declined to impose Guidelines sentences on defendants who, like Hernandez, were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants."]; *United States v. Carmona-Rodriguez*, 2005 WL 840464, at 4[Low probability that defendant, who is 54 years of age, will recidivate] (S.D.N.Y. Apr.11, 2005); *United States v. Nellum*, 2005 WL 300073, at 3 (N.D.Ind. Feb.3, 2005)["The likelihood of recidivism by a 65 year old is very low."]. Indeed, as *Nellum* notes:

> [t]he positive correlation between age and recidivism is impossible to deny. Indeed, as shown above, the Sentencing Commission in its report did not even bother to separately report statistics on recidivism rates of inmates who are, for example, age 55 at the time of sentence (or age 57 like Nellum). One can only reasonably assume that the trend of decreasing recidivism continues downward after the age of 50. Under the guidelines, the age of the offender is not ordinarily relevant in determining the sentence. *See* § 5H1.1.

2005 WL 300073 at 3.

Montgomery was 65 years old at the time of sentencing. His age in connection with the issue of recidivism and the protection of the public was not taken into consideration at sentencing

as a § 3553(a) factor. If age had been taken under consideration as a § 3553 factor, a lesser sentence would be justified.

At the original sentencing hearing, the court denied Montgomery's departure motion for age as it did not think it was appropriate. Transcript 70 lines 22 - 24. However, considering age under the § 3553 factors is different then its consideration under the Guidelines. Accordingly, the denial of a departure motion on age does not bar consideration of age under the non Guideline § 3553 factors. *United States v. Heldeman,* 402 F.3d 220, 224 (1st Cir.2005)[Remand for re-sentencing under advisory Guidelines when, at pre *Booker* sentencing the district court felt bound by the Guidelines to deny a motion for a downward departure based on the defendant's advanced age and physical condition]

2. **THE COMBINATION OF MONTGOMERY'S AGE AND HEALTH**

The combination of age and health are appropriate § 3553 considerations in imposing sentence. *Whipple*, 414 F.3d at 890 - 891. *See United States v. Ryder,* 414 F.3d 908, 920 (8th Cir. 2006); *Hernandez,*, 2005 WL 1242344 at 5 - 6; *Carmona-Rodriguez*, 2005 WL 840464 at 4. For instance, in *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) the defendant, a 64 year old male pled to possession of child pornography. The minimal Guideline range was 151 months. The district court, considering defendant's "age, his prior minimal criminal record, and his medical condition, " reasonably sentenced defendant to 72 months, which was less than half of the minimum Guideline range. *Id* at 1324 - 1325. The consideration of these joint factors is heightened when they amount to a 'life sentence" or a "death sentence", as the case may be, when viewed in conjunction with the defendant's age and health. *See e.g. Whipple*, 414 F.3d at

890 - 891.

At the time of sentencing, Montgomery was a 65 years old man who suffered from diabetes. The 20 year sentence would mean Montgomery would be 85 years old at the expiration of his sentence. At a re-sentencing hearing, Montgomery will show that the age of 85 is greater than his normal life expectancy, much less his life expectancy as a prisoner suffering from diabetes. Montgomery's crimes do not warrant a life sentence, even under the advisory Guidelines. Such a showing is necessary as at the sentencing hearing the following exchange occurred:

> MR. BERLINE: Thank You. That if this court sentences him to 20 years, that he will die in prison, your Honor.
>
> THE COURT: Well, that's your characterization.

Transcript at 52 lines 15 - 18. A sentencing hearing will allow Montgomery to show under § 3553(a) that a 20 year sentence is a de facto life sentence is more than his personal characterization.

### 3.  LACK OF A PRIOR CRIMINAL HISTORY

Montgomery was 65 years of age at the time of sentencing. Montgomery does not have any prior criminal history or criminal convictions. This circumstance, especially in conjunction with his age warrants a below Guideline sentence. *Nellum*, 2005 WL 300073 at 3; *Lucania*, 379 F.Supp.2d at 297 -298; *Carmona-Rodriguez*, 2005 WL 840464 at 4; *Hernandez*, 2005 WL 1242344 at 5.

4.   **PERSONAL REFERENCES**

Considering letters submitted concerning the defendant are properly considered as part of the defendant's characteristics. *United States v. Johnson*, 445 F.3d 339, 346 (4th Cir. 2006); *United States v. Bortnick*, 2006 WL 680544 at 6 (E.D. Pa. 2006). Montgomery has character letters which should be considered in connection with his sentence. *See* Exhibit A. Additionally, at a re-sentencing hearing Montgomery's wife will offer testimony concerning his character.

Moreover, it should be noted that the PSR did not contain any reference or mention of negative personal history.

B.   **NATURE AND CIRCUMSTANCE OF THE OFFENSE**

1.   **MONTGOMERY IS NOT RESPONSIBLE FOR THE PROLONGED RECEIVERSHIP**

A justification articulated for the sentence imposed under the mandatory Guideline regime included that Montgomery's activity was responsible for the Bank of Saipan being in Receivership at the time of sentencing and at the time of the first remand in this case. *See United States v. Montgomery*, Cr. Case # 02-0010, Order After Remand Denying Re-sentencing (D.N.M.I. August 29, 2005); Sentencing Transcript ("Transcript") at 68 line 6-10. The length of time the Bank remained in receivership was an important consideration for the Court. *See Id.* In denying re-sentencing, this Court specifically ruled that Montgomery's:

> ...primary role in the intentional fraud perpetrated on the Bank of Saipan resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002. The cold, calculating nature of the crime and the financial losses and

6

inconvenience caused to so many victims warranted the sentence imposed

However, given the "wide universe of possibilities under § 3553(a)" Montgomery would and will show that the Bank of Saipan does not contend Montgomery is the person responsible for the length of the Bank's receivership. Indeed, the Bank blames the intentional acts of others, namely the first Receiver for a prolonged receivership and the problems it encountered in emerging from Receivership. *See Bank of Saipan, Inc. v. Atalig*, 2005 MP 3 , 2005 WL 3767671 (N. Mar. I. 2005). *See Bank of Saipan v. Fennell* et al, Civil Action # 04-0449, Amended Complaint (N.Mar. I. Super. Ct)[1].

In *Fennell*, the Bank alleges the receiver "deliberately and malicious harmed the Bank, its depositors, employees, customers ...." Amended Complaint at ¶16. The Bank also contends the receiver possessed the intent to "destroy the Bank." Amended Complaint at ¶ 48. It is also contended that the receiver and others formed an "unlawful agreement" to among other things, destroy the Bank. See Amended Complaint at 68. Thus, while the Court seems to blame all of the Bank's woes on Montgomery, the Bank, which is the victim, does not. This is a factor that should be taken into consideration under § 3553(a).

Even more so, the receivership has ended and it appears that depositors have not suffered any loss of their accounts. *See Acting Secretary of Commerce v. Bank of Saipan*, Civil Action No. 02-0268, Order Terminating Receivership (N. Mar. I. Super. Ct. Aug 11, 2006); *Acting Secretary of Commerce v. Bank of Saipan*, Civil Action No. 02-0268, Order on Motion to Amend Judgment Terminating Receivership (N. Mar. I. Super. Ct. Aug 29, 2006)[2] .

---

[1] A certified copy of the Complaint is filed herewith as Exhibit "B."

[2] A copy of the orders are filed herewith as Exhibit 'C."

2.  **THE CHARACTERISTICS OF THE BANK AND UFX**

Unlike the Federal Savings and Loan scandal of the 1980's, Montgomery did not cause the collapse of a sound financial institution. In fact, the Bank of Saipan did not collapse and it was not a sound financial institution. At a re-sentencing hearing not subject to the mandatory Guidelines, Montgomery will show that Bank of Saipan was an unsound financial institution that had a history of engaging in non prudent lending practices. Montgomery will show that, David Berger, a certified public accountant and former Bank director who served on the Bank's loan committee resigned out of "concern about personal liability as a Board member." Trial Transcript ("TT) at 108. He was scared because there was "too much exposure for my comfort." *Id*. Montgomery would further show that the Bank applied for and withdrew its for FDIC membership. TT at 373 - 374. Most importantly, it would be shown that the FDIC finding concluded that the:

> 'overwhelming cause' for the unsatisfactory asset quality was the absence of 'prudent lending policies, procedures, and underwriting standards' leaving the management without any control over the administration credit of the bank's credit function.

The FDIC also found that more than one half of BOS' loan portfolio was past due. The FDIC further found that the bank: (1) was structurally unprofitable, (2) overstated its earnings, (3) poorly maintained loan documentation making it impossible to accurately assess collateral protection or repayment capacity (4) lost three million dollars during the six month period ending March 31, 1997, (5) had high overhead expenses and unreasonable exorbitant salary and personnel expenses (6) had nonexistence collection efforts, (7) ad hoc planning process, (8) lacked satisfactory compliance with banking laws and regulations, and (9) the CEO, Tomas

Aldan, did not possess adequate banking experience. *See* Exhibit D.

The evidence would further show that after withdrawing its FDIC application, the Bank continued to engage in the same banking practices condemned by the FDIC. Specifically, audits conducted by Deloitte Touche Tohmatsu for 1997, 1998, 1999 and 2000 corroborated the fact that the Bank did not take any substantive actions to address the deficiencies found by the FDIC. *See* Exhibit D.

With respect to UFX, Montgomery will show that it was operated in a criminal manner by its owners who were indicted and pled to wire fraud involving over $4,000,000.00.

The fact that the two principal victims were not sound and prudent financial entities mitigates, for sentencing purposes, the impact Montgomery's acts had on those entities[3].

**3.     MONTGOMERY DID NOT PROFIT FROM THE CRIMES**

A defendant's culpability is mitigated when he does not act for personal gain. *United States v. Ranum*, 353 F.Supp.2d 984, 989 (E.D.Wis.,2005). Admittedly, from the victim's perspective a loss is the same no matter why it occurred; but from the standpoint of personal culpability, there is a significant difference. *Id*.

Montgomery did not profit from his crimes nor was there any allegation at sentencing that he intended to profit personally at the expense of others. What the evidence and record shows is that Montgomery apparently made the unfortunate decision to "cut corners" in an effort to further

---

[3] It should be noted that Michele Hom is the only individual identified in the PSR or the sentencing hearing that suffered harm as a result of Montgomery's fraud. The record is silent on whether or how this loss affected Ms. Hom, if at all.

his business plans and ventures which necessitated having a functioning bank. This circumstance is different from someone who loots a financial institution or other organization solely for personal profit. *See United States v. Emmenegger*, 329 F.Supp.2d 416, 427-28 (S.D.N.Y.2004) ["Were less emphasis placed on the overly-rigid loss table, the identification of different types of fraud or theft offenses of greater or lesser moral culpability or danger to society would perhaps assume greater significance in assessing the seriousness of different frauds."].

**C.   THE NEED FOR THE SENTENCED IMPOSED**

§ 3553(a)(2)( C) requires that the sentence imposed takes the following into account:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
( c) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care.

The sentence imposed must be the lowest sentence that is "minimally sufficient" to comply with 18 U;S.C. §3553(a)(2). See *United States v. Ferguson,* 456F.3d 660, 665 (6th Cir. 2006); *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006); 18 U.S.C. § 3553(a)(1)["The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.

**1.   THE NEED TO PROTECT THE PUBLIC**

Age is clearly relevant to the consideration of "protect[ing] the public from further crimes of the defendant." *Nellum* , 2005 WL 300073 at 3. *See also Booker*, --- U.S. at ----, 125

S.Ct. at 765. It has been previously noted that Montgomery's age establishes that future criminal conduct is extremely minimal, if not non-existent. *See supra* at 3 - 6.

**2.    THE NEED FOR DETERRENCE**

Age is also a relevant consideration for deterrence. *United States v. Lucania*, 379 F.Supp.2d 288, 297 -298 (E.D.N.Y.,2005). It has been previously noted that Montgomery's age establishes that future criminal conduct is extremely minimal, if not non-existent. *See supra* at 3 - 6.

**3.    THE NEED FOR EDUCATIONAL OR VOCATIONAL TRAINING OR MEDICAL CARE**

Likewise, Montgomery has type II diabetes which does require some medical care and at a hearing it will be established that this care increases with age.

**4.    THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE , TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE**

With respect to the considerations of subsection A, lesser sentences were imposed upon other persons associated with the same crimes as Montgomery. Even more so, those persons who received lesser sentences are younger than Montgomery and do not have his health issues. Additionally, some may even have a criminal past, something Montgomery does not possess. These factors, singularly or jointly demonstrate that a 20 year sentence is "greater than necessary" to accomplish the goals of § 3553(a)(2)( C).

D. **DISPARITY OF SENTENCES**

Disparity in sentencing is a factor to be considered post Booker. *See United States v. Plouffe*, 445 F.3d 1126, 1131-32 (9th Cir.2006). The consideration of disparity is not limited to the disparity in sentencing between co-defendants but includes disparity with sentences in other federal cases. *See United States v. Marcial-Santiago*, 447 F.3d 715, 717-19 (9th Cir.2006). It is noted that Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case. *United States v. Parker*, 462 F.3d 273, 277 (3rd Cir. 2006). As aptly noted by one jurist, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." *United States v. Galvez-Barrios*, 355 F.Supp.2d 958, 963 (E.D.Wis. 2005) quoting *United States v. Bonnet-Grullon*, 53 F.Supp.2d 430, 435 (S.D.N.Y.1999), aff'd, 212 F.3d 692 (2d Cir.2000). Montgomery's 20 year sentence presents a glaring disparity given sentences in major white collar cases.

*United States v. Rigas*, Criminal Case No. 02-01236 (S.D.N.Y.) concerned criminal charges against John and Timothy Rigas for their fraudulent looting of Adelphia, the nation's fifth largest cable company, for their personal benefit. The sums involved in that case was hundreds of times the amount involved in this case. *See* Exhibit E at 1 - 5. John and Timothy Rigas received 15 and 20 years respectively. *Id*.

*United States v. Ebbers*, Criminal Case No. 02-01144 (S.D.N.Y.) involved criminal fraud which resulted in the collapse of World.com, a multi billion dollar corporation and wiped out the life savings of employees and investors. *See* Exhibit E at 7 - 10. The defendant was sentenced to a 25 year term. *Id*.

12

*United States v. Skilling*, Criminal case No. 04-00025 (S.D. Tex) concerned criminal charges arising from fraudulent conduct which caused the collapse of Enron, the seventh largest corporation in the United States. In addition to the collapse of Enron, the fraudulent conduct resulted in tens of thousands of people losing their jobs and the loss of more than $2 Billion dollars in pension funds. *See* Exhibit E at 12 - 13. The defendant received 24 years. *Id*.

*United States v. Adelson*, 441 F.Supp.2d 506 (S.D.N.Y.,2006) involved fraud which led to losses between $50-100 Million. 441 F.Supp2d at 510. The court imposed a 42 month sentence after comparing the case to those of the Rigas' and Ebbers. 441 F.Supp.2d at 512. In doing so, the court noted "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense." *Id*. Adelson concluded its analysis by observing that:

> [t]o put this matter in broad perspective, it is obvious that sentencing is the most sensitive, and difficult, task that any judge is called upon to undertake. Where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just, and reasonable. But where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences.

441 F.Supp.2d at 515. The same reasoning and rational should apply to this case.

Montgomery's activities pales in light of the fraudulent conduct and human tragedy that ensured following Adelphia, World .com and Enron. Yet, Montgomery's sentence ranks with the sentences imposed in those case. Indeed, there was not any testimony at Montgomery's hearing or evidence presented that anyone lost their job, their pension or their live savings as a result of

Montgomery's conduct. Likewise, there was not any evidence or testimony that Montgomery's conduct was meant to enrich himself or loot the corporation for his own personal pleasures. This demonstrates the 20 year sentence is extremely disparate when compared with other sentences for white collar fraud. The fact that Montgomery's crimes occurred in the Northern Mariana Islands as opposed to the Southern District of New York, Central District of California, Northern District of California, Southern District of Texas or some other federal district is not justification for the harsh 20 year sentence.

**II.    THE PROSECUTION DOES NOT OPPOSE RE-SENTENCING**

*Ameline* provides that if the parties and court agree to re-sentencing then the case can "proceed directly to a re-sentencing proceeding, without the need for submissions by counsel or separate consideration of the question of whether the previous sentence would have been different had the sentencing court known that the Guidelines were not mandatory." 409 F.3d at 1085.

Exhibit F filed herewith shows the prosecution does not object to re-sentencing. In fact, Exhibit F establishes that the prosecution has represented that it will stipulate to and not oppose Montgomery's submission for re-sentencing. Research has not uncovered any *Booker* pipeline case wherein a court declined to re-sentence when the parties had agreed to re-sentencing.

**CONCLUSION**

Non-Guideline factors warrant re-sentencing under *Ameline*. Even more so, the prosecution agrees that re-sentencing is appropriate and has represented that it does not and will

not oppose re-sentencing. Since the non Guideline factors and the parties all support re-sentencing, Montgomery should have a new sentencing hearing.

                    Law Office of G. Anthony Long


               By:/s/_____
                      G. Anthony Long