Law Office of G. Anthony Long
P. O.  Box 504970, Beach Road
San Jose, Saipan, MP  96950
Tel No. (670) 235-4802
Fax No. (670) 235-4801

Attorney for Defendant Montgomery

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL CASE NO.  02-00010 |
| Plaintiff | ) |
| | ) |
| v. | ) EXHIBITS TO  RE-SENTENCING |
| | ) MEMORANDUM |
| BERT DOUGLAS MONTGOMERY | ) |
| | ) |
| Defendant | ) |
| | ) |

Attached hereto are Exhibits A-E to the memorandum supporting re-sentencing.


Law Office of G. Anthony Long


By: _____
       G. Anthony Long

# EXHIBIT  A

October 19, 2006

Honorable Judge Alex Munson
Chief District Judge
Northern Mariana Islands
Saipan, MP

Dear Judge Munson:

I'm writing to you in reference to Bert Douglas Montgomery, who I have known for approximately forty years, first as a friend and manager, and later as a business partner. I hope that my letter might help, in some small way, bring a component of mercy to his future sentencing.

I first met Doug in August of 1967, a few days after I had been released from the hospital following lung surgery to remove a tumor. He had been promoted to manager of the company where I worked as a sales person, selling business equipment. I was in the process of turning in my resignation due to the fact that I was unable to lift much of anything, much less the heavy business equipment that we were expected to carry in and out of perspective buyer's offices. Doug refused my resignation, shook his head and said don't worry; we'll find a way.

For the next four months Doug would personally go with me on every equipment demonstration, first loading the equipment and then unloading the equipment at the scheduled place of business, and assist me in the sales demonstration. Thanks to Doug I was selected as one of the region's top salesman, and was awarded a trip to Las Vegas the next year.

My story may seem somewhat superfluous, but my point is that this is just one of countless acts of Doug's generosity and kindness that I have both experienced and observed over the past four decades. I can't recall his ever losing his temper, or saying an unkind word about anyone. During our earlier partnership period his voice was most frequently the voice of reason, most always counseling for rationality and compromise when required.

I visit with Doug every month or so where he is incarcerated at the La Tuna Correctional Institution near my home in El Paso, Texas. We talk frequently about what he would do with his life if he is able to re-enter society. I've told him that I have a job waiting for him upon his release, and we both look forward to the day that might happen. I can see that the past mistakes that he has made has taken a tremendous toll on his spirit, as well as his future. I now see a 70-year old person who has lost everything, including his freedom.

I ask for mercy for all of us that hold love in our heart for Doug.

Respectfully,

Jerry Bacon
2124 Montana Avenue
El Paso, Texas 79903

October 15, 2006

Dear Judge Munson,

My Father (Bert Douglas Montgomery) has been a good law abiding person all my life. When I turned eighteen I moved to Houston to be near him. He helped me through College and has been a good role model for me. I wish for him to have an early release so he can be a close to our family again.

Thank you,

Marc Douglas Montgomery

October 15, 2006

Dear Judge Munson,

I, Mitzi Potter, am the fiancé of Doug Montgomerys' son, Marc Montgomery. Ever since I've known Doug, he's been a good Father and friend to me. I regard him as law abiding and upstanding citizen. I, along with the rest of the family hope he will get an early release from prison.

Thank you,

Mitzi Potter

October 18, 2006

To The Honorable Judge Alex Munson

Dear Judge Munson,

This letter is in regards to the character of B. Douglas Montgomery. I was married to Douglas from 1990 – 1998. We have a wonderful 15 year old son. Douglas is a very sweet and kind hearted man. Douglas and I have remained friends through everything as we respect each other. Kasey and I look forward to seeing Douglas very soon.

If you have any questions, please do not hesitate to contact me via email or cell phone.

Thank you, *Kelly Middlebrooks Montgomery*

Kelly Middlebrooks Montgomery
kellymiddlebrooks@yahoo.com
281-610-1122 - cell

October 13, 1006

Dear Judge Munson,

I was married to Doug Montgomery and have two daughters and one son with him. I married when I was 16. I never had to work, Doug was a good provider and a hard worker and a loving father. I got to stay at home and raise my children. We separated because we were too young to know what we wanted. But, we remained friends all these years. I regret that Doug is in prison and hope he will get out soon.

Thank you for your consideration,

Mary Carol Duncan

Mary Carol Duncan

LAW OFFICES OF
# POOL BLANKENSHIP VINCENT & POOL
A PROFESSIONAL ASSOCIATION

430 NORTHWEST ELEVENTH STREET
OKLAHOMA CITY, OKLAHOMA 73103
TELEPHONE (405) 235-0484
FAX (405) 236-3689

TED N. POOL, PLLC
RAYMOND A. VINCENT
SHERRY BLANKENSHIP (1941-2002)

GARRETT N. POOL

1919 SOUTH SUNNY LANE, SUITE 200
DEL CITY, OKLAHOMA 73115
(405)677-3301
(405)677-3365 FAX

October 18, 2006

Judge Alex Munson
Chief District Judge
Northern Mariana Islands

Dear Judge Munson:

The purpose of this letter is to support a sentence for Mr. Montgomery of time served.

I have been a long time friend of Mr. Montgomery and have known him since the fourth grade. We were in contact from that point through a good bit of college, and off and on through the years since. I am an attorney and have periodically done favors for him in terms of one legal issue or another, never charging him anything for what was done because of our friendship.

Aside from the item you are presently addressing regarding his sentencing I have never known him to be trouble with law before. He had an interest in charitable institutions, as I recall, and served on the board of The Juvenile Diabetes Association at one time, I believe. He, also, did some work to help poor and underprivileged families in Thailand for a while, as well.

I believe justice would be served if he could be released on time served to date.

Sincerely,

Ted N. Pool

TNP/kjt

October 18, 2006

To: The Honorable Alex Munson

### Bert Douglas Montgomery

I have known Douglas Montgomery for the past two (2) years as a friend and business associate.

He is a man of great integrity, dedicated to family and work, and dependable. Furthermore, he has expressed his belief in justice, a fair judicial process, and respect for this honorable court.

For your information, I have worked as an educator, chaired several boards (profit and nonprofit), and published several works.

In summary, I highly recommend Douglas Montgomery for a sentence reduction. He would be a valuable asset to any organization and society.

Sincerely,

Ray A. Ransom, Ph.D.

# EXHIBIT   B

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Suite 801 Pacific News Bldg.
238 A.F.C. Flores St.
Hagatna, Guam  96910
Telephone:  (671) 472-2089/2090
Facsimile:  (671) 477 5206

CALVO AND CLARK, LLP
MH II Building
Marina Heights Business Park
PMB 951 Box 10001
Saipan, MP 96950
Telephone:  (670) 323-2045
Facsimile:  (670) 323-2276

Attorneys for The Bank of Saipan, Inc.

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| THE BANK OF SAIPAN, INC., | ) | CIVIL ACTION NO. 04-449A |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| RANDALL T. FENNELL; RICHARD | ) | **FIRST AMENDED COMPLAINT** |
| PIERCE; WHITE, PIERCE, MAILMAN, | ) | **AND DEMAND FOR JURY TRIAL** |
| & NUTTING; DAVID W. AXELROD; | ) | |
| SCHWABE, WILLIAMSON, & WYATT; | ) | |
| AND DOES 1 20 | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, the Bank of Saipan, Inc. (hereinafter "Bank of Saipan" or the

"Bank"), which for its First Amended Complaint against Defendants Randall T. Fennell, Richard

# ORIGINAL

Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Schwabe, Williamson & Wyatt, and Does 1-20 alleges as follows:

## JURISDICTION AND PARTIES

1.    This Court has jurisdiction over this matter pursuant to the N.M.I. Constitution, Article IV, Section 2, 1 C.M.C. § 3202.

2.    Plaintiff Bank of Saipan is a CNMI corporation, currently in receivership, duly-licensed and authorized to engage in retail banking activities in the Commonwealth.

3.    Upon information and belief, Defendant Randall T. Fennell ("Fennell") is a resident of the Commonwealth of the Northern Mariana Islands who served as the receiver of the Bank from April 30, 2002 to September 27, 2002.

4.    Defendant Richard Pierce ("Pierce") is a resident of the Commonwealth of the Northern Mariana Islands.

5.    At all relevant times herein, Defendant White, Pierce, Mailman, & Nutting ("White, Pierce") was a CNMI law firm.

6.    Defendant David W. Axelrod ("Axelrod") is, on information and belief, a resident of Portland, Oregon.

7.    Defendant Schwabe, Williamson, & Wyatt ("Schwabe") is, on information and belief, a Portland, Oregon law firm.

8.    Except as described herein, the true names of the defendants sued as Does I through 20, inclusive, are unascertained to the Bank which therefore sues these defendants by such

2

fictitious names. The Bank will amend this Complaint to allege their true names and capacities when ascertained. These fictitiously named defendants were involved in the design, implementation, approval, and furtherance of the transactions complained of herein or received benefits from those transactions. These defendants aided or abetted, or participated with the other defendants and others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

9.     The named and Doe defendants in this action are sometimes referred to herein as ""Defendants."

## OPERATIVE FACTS

10.     On or about April 30, 2002, the CNMI Government filed an ex parte petition in the CNMI Superior Court for the appointment of a receiver for Plaintiff Bank of Saipan, pursuant to a Commonwealth statute, 4 CMC §6105, in the case Acting Secretary of Commerce Fermin M. Atalig v. Bank of Saipan, Civ. Action No. 02-0268B.

11.     At the hearing on the petition, held that same date, April 30, 2002, the Government for the first time identified Defendant Randall T. Fennell as the individual to be appointed receiver. The Bank reserved the right to object to Fennell's appointment; but on said date the Bank was ordered into receivership and Fennell was appointed as temporary receiver for 30 days. The April 30 Order set forth Fennell's limited powers as temporary receiver.

12.     In obtaining his appointment, Fennell deliberately and repeatedly failed to disclose material information that he was bound to disclose to the appointing court and the Bank

regarding his conflicts of interest and hostility against the Bank, its major shareholders and certain

of its directors. Such nondisclosures were intentional, deliberate, or reckless.

13.    In connection with his appointment, Fennell retained Pierce, White, Pierce,

Axelrod, and Schwabe (collectively, the "Receivership Attorneys") to act as his counsel. The

Receivership Attorneys also failed to disclose material information about their conflicts of interest and

how said conflicts would adversely affect their representation of the Bank's court-appointed receiver.

Pierce and White, Pierce had concurrently represented the Bank since 1997 and Pierce never

disclosed or obtained consent to his representation of Fennell.

14.    Once appointed and retained, Fennell and the Receivership Attorneys owed

fiduciary duties to the Bank, including, without limitation, the duty to conduct the receivership in the

best interests of the Bank, to avoid harming the Bank, to disclose all material information affecting

the receivership, and to place the interests of the Bank above their own personal interests. At all

relevant times to this action, Fennell and the Receivership Attorneys were motivated by, and

conducted the receivership consistent with, a hidden agenda to destroy rather than rehabilitate the

Bank, to the detriment of the Bank, its depositors and shareholders. Fennell and the Receivership

Attorneys exercised the receivership powers in a manner inconsistent with the best interests of the

Bank.

15.    Fennell precipitated and engaged in ex parte communications with the Court

off-the-record, with no recording. On or about May 8, 2002, without notice to the Bank and

without giving the Bank an adequate opportunity to object, Fennell filed an ex parte petition for

4

"Clarification of Order Granting Petition for Appointment of Receiver." The Court granted Fennell's petition on May 10, 2002 and the Order greatly expanded Fennell's powers as receiver and extended his receivership indefinitely. Notwithstanding this expansion of powers, Fennell exceeded the scope of his powers before and after this order.

16.    During his tenure as receiver, Fennell deliberately and maliciously harmed the Bank, its depositors, employees, customers, directors and shareholders by, inter alia, attempting to destroy the Bank instead of working to rehabilitate it. Fennell ignored requests from Bank depositors for information concerning their deposits. Fennell actively endeavored to prevent the Bank from participating in discussions and proceedings directly related to the Bank's continued existence and rehabilitation. Fennell's practice of excluding the Bank from such ex parte proceedings that were conducted off-the-record and with no recording was unlawful and inappropriate; and said practice deprived the Bank of due process of law during the course of the receivership proceedings, in breach of Fennell's fiduciary duty to the Bank.

17.    Although Fennell had fiduciary duties not to damage the Bank, or its depositors, and to act fairly towards its employees, shareholders, and employees, he publicly denigrated the Bank while serving as receiver, calling it, inter alia, a "failed institution." Such conduct undermined pubic confidence in the Bank at a critical point in its existence and endangered and retarded the Bank's subsequent rehabilitation efforts.

18.    Fennell's engaged in one or more "private briefings" with the Court which were normally "off-the-record" and with no recording, for the purpose of advancing his wrongful and

5

damaging agenda, as he knew it would be difficult if not impossible for the Bank to obtain meaningful and timely judicial review of what Fennell and the Receivership Attorneys said or submitted to the court.

19.     Fennell repeatedly refused to meet or cooperate with the Bank's Directors or counsel in furtherance of efforts to rehabilitate the Bank. Fennell's refusal to work with the Directors at critical times was in breach of his duty to work with the Bank to avoid liquidation and achieve the best possible results for the Bank, its shareholders, depositors, employees, and customers.

20.     Fennell reopened the Bank during his tenure, without any rehabilitation plan in place, allowing depositors to withdraw a large percentage of the Bank's deposits and precipitating a "run" on the Bank, seriously eroding the Bank's financial status and endangering its ability to become rehabilitated.

21.     Fennell acted as receiver for the Bank from April 30, 2002 until he was removed by order from the Supreme Court of the Commonwealth of the Northern Mariana Islands on May 29, 2002. The Supreme Court stayed the May 29 Order on May 31 and reinstated Fennell as temporary receiver but limited his powers to those provided by law and specifically ordered that Fennell could not liquidate the Bank's assets. On September 27, 2002, Fennell was permanently removed and replaced as receiver. During this period, Fennell sought to be exonerated from "any and all claims" which might result from his acts or omissions as receiver. Fennell moved and the receivership court granted on September 27, 2002 and thereafter on December 31, 2002, his

6

request that the Bank defend and indemnify him for any and all claims arising from his actions as receiver. During this period, Fennell exceeded the scope of his authority as receiver by engaging in the conduct described herein and failed to disclose the improper actions alleged herein in obtaining the receivership court's order.

22.    On September 27, 2002, and December 31, 2002, the Honorable Edward Manibusan issued Orders exonerating the former Receiver. Thereafter, on January 27, 2003, the Bank of Saipan filed a proposed Rehabilitation Plan with the Court. In this Rehabilitation Plan, the Bank specifically noted that the former Receiver's actions had been wrongful and had caused harm to the Bank:

> Original Receiver's actions adversely affected loan collections and generated negative images regarding the possibility of rehabilitation and reorganization of the Bank of Saipan.

23.    The Rehabilitation Plan stated that one of the solutions to the Bank of Saipan's problems was to aggressively pursue claims against wrongdoers:

> Outlined below are a series of proposed solutions to the Bank's problems:
>
> *Aggressively* seek to recover fraudulent loans and pursue claims against wrongdoers.

24.    On February 13, 2003, the Honorable Edward Manibusan "approved" the "Rehabilitation Plan presented to the Court." In this same Order, the Court vacated any prior Orders inconsistent with the Rehabilitation Plan proposed by the Bank:

7

To the extent that all previous Orders of this Court are inconsistent with the rehabilitation of the Bank, they are superceded and vacated.

25.     Inasmuch as the "aggressive" pursuit of claims against wrongdoers is mandated by the Rehabilitation Plan, and this is expressly identified as one of the "solutions" to the Bank's problems, then the pursuit of such claims by definition is consistent with the rehabilitation of the Bank. All prior Orders of the Court "inconsistent with the rehabilitation of the Bank," which must include the Orders barring the pursuit of claims against wrongdoers, were superceded when the Court approved to the Rehabilitation Plan.

26.     At all times herein, through the ex parte hearings conducted off-the-record and with no recording, the failure to produce requested information that they were bound to disclose, and other means, Defendants have sought to fraudulently conceal from the Bank the fact that it has causes of action against Defendants and has thereby deprived the Bank of a reasonable opportunity to discover such causes of action until some time after Fennell was permanently removed as the receiver and a full investigation could be undertaken. Even then, continuing non-cooperation has hindered that investigation and acted to further fraudulently conceal the causes of action.

27.     The Bank, by and through its Board of Directors, took a timely appeal from the receivership court's orders granting Fennell's exoneration motions and requests for immunity, indemnification and defense.  That appeal, Consolidated Appeals Nos. 02-0029GA and 03-0008GA, remains pending in the Supreme Court of the Commonwealth of the Northern Mariana Islands.

28.     At all relevant times herein, defendants were aware of each other's conduct, assisted, participated in, furthered, aided, abetted, comforted, and encouraged each other in such conduct and acted in concert with one another.

### FIRST CAUSE OF ACTION
### MALPRACTICE/BREACH OF FIDUCIARY DUTY
### (PIERCE AND WHITE, PIERCE)

29.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 28 of the Complaint.

30.     Pierce and White, Pierce owed the Bank the fiduciary duties that an attorney owes a client. Specifically, Pierce and White, Pierce owed the Bank duties of undivided loyalty, candor, confidentiality and good faith.

31.     At the time Pierce and White, Pierce agreed to represent Fennell, Pierce and White, Pierce were concurrently representing the Bank.

32.     Pierce's and White, Pierce's representation of Fennell's interest was directly adverse to the interests of the Bank and Pierce and White, Pierce did not disclose this conflict of interest or obtain consent to their representation of Fennell, nor could they have obtained consent under applicable law.

33.     Among other things, Pierce and White, Pierce disclosed the Bank's confidential information without the knowledge, consent or participation of the Bank which was designed to harm the Bank's interest, its depositors, employees, customers and shareholders. Pierce

and White, Pierce intentionally and maliciously failed to faithfully execute service or otherwise provide notice to the Bank of said disclosures.

34.     Through the conduct complained of herein, Pierce and White, Pierce breached their duties as attorneys to the Bank.

35.     As a direct and proximate result of Pierce's and White, Pierce's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (THE RECEIVERSHIP ATTORNEYS)

36.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 35 of the Complaint.

37.     The Receivership Attorneys owed strict fiduciary duties to the Bank.

38.     The Receivership Attorneys were required at all times, honestly and in good faith with a view to the best interests of the Bank, to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

39.     The Receivership Attorneys breached these duties by among other things, failing to act in the Bank's best interest, failing to loyally represent the Bank, failing to hold the Bank's confidences inviolate, and failing to disclose material facts to the court and the Bank, including, but not limited to conflicts of interests and breaches of fiduciary duty by other Defendants.

40.     As a direct and proximate result of this conduct, the Bank has suffered damages in an amount to be proven at trial.

10

### THIRD CAUSE OF ACTION
### PARTICIPATION IN BREACH OF FIDUCIARY DUTY
### (ALL DEFENDANTS)

41.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 40 of the Complaint.

42.     Pierce knew or should have known of White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, directing, assisting, approving and otherwise furthering their scheme through the unlawful, improper, fraudulent and self-dealing actions alleged herein.

43.     Schwabe and Axelrod knew or should have known of Pierce, White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, assisting, directing, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

44.     Fennel knew or should have known of the breaches of fiduciary duty by the other Defendants and actively participated in their breaches by implementing, assisting, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

45.     As a direct and proximate result of Defendants' participation in breaches of fiduciary duty detailed herein and in other respects, the Bank has been damaged in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION
### FRAUD
### (FENNELL AND THE RECEIVERSHIP ATTORNEYS)

46.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 45 of the Complaint.

47.    Fennell and the Receivership Attorneys owed the Bank fiduciary duties of loyalty, due care, confidentiality and full disclosure.

48.    Fennell and the Receivership Attorneys intentionally, knowingly, or otherwise culpably concealed or suppressed by means of written and oral communications, and by conduct, from the Bank that their true intent was to destroy the Bank so as to be able to retaliate against the Bank's shareholders, directors and attorneys.

49.    Fennell and the Receivership Attorneys fraudulently concealed or suppressed material facts that he was bound to disclose or, in the alternative, told the Bank and the Court facts to mislead the Bank and the Court from discovering the concealed or suppressed facts.

50.    Fennell and the Receivership Attorneys fraudulently and actively concealed material facts with the intent to deceive and defraud the Bank and the Court.

51.    The Bank was unaware of the concealed or suppressed facts and would have taken action had it known the true facts.

52.    The omissions and representations of Fennell and the Receivership Attorneys were material, false and misleading, and Fennell and the Receivership Attorneys knew they were

12

false and misleading at the time they were made, and they were made for the purpose of inducing the Bank and the Court to rely upon them and to act or to refrain from acting in reliance thereon.

53.    The Bank reasonably and justifiably relied upon untruthful representations, statements and omissions and acted in accordance thereof.

54.    As a direct and proximate result of Fennell and the Receivership Attorneys' conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## FIFTH CAUSE OF ACTION
### CONDUCT BEFORE APPOINTMENT AS RECEIVER;
### CONDUCT IN EXCESS OF APRIL 30, 2002 ORDER;
### CONDUCT IN EXCESS OF MAY 10, 2002 ORDER;
### CONDUCT IN EXCESS OF MAY 29, 2002 ORDER;
### CONDUCT IN EXCESS OF MAY 31, 2002 ORDER;
### CONDUCT IN EXCESS OF SEPTEMBER 27, 2002 ORDER
### (FENNELL)

55.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 54 of the Complaint.

56.    Fennell's powers as receiver are clearly set forth in the Court's orders of April 30, 2002, May 10, 2002, and September 27, 2002 and the Supreme Court's Orders of May 29, 2002 and May 31, 2002.

57.    Before his appointment and during his tenure as receiver, Fennell intentionally, willfully and maliciously acted in excess of these powers to the detriment of the Bank.

13

58.     As a direct and proximate result of Fennell's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (FENNELL)

59.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 58 of the Complaint.

60.     Fennell owed strict fiduciary duties to the Bank. Fennell was required at all times honestly and in good faith with a view to the best interests of the Bank to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

61.     Fennell failed to fulfill his obligations to the Bank, failed to faithfully execute service, and breached his duties to the Bank in various ways, including, without limitation, the acts and omissions alleged herein.

62.     As a direct and proximate result of Fennell's breach of fiduciary duty detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH BUSINESS RELATION
### (FENNELL)

63.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 62 of the Complaint.

64.     Fennell intentionally and willfully injured the Bank by publicly disparaging the Bank, seeking to destroy the Bank, prematurely reopening the Bank without a Rehabilitation Plan

14

and causing a "run" on the Bank, inducing the Bank's customers to withdraw their funds from the Bank while precluding them from doing other forms of business with the Bank, refusing to cooperate and respond to depositor requests in a prudent manner and by other conduct that disparaged, neglected or harmed the Bank's customers and depositors.

65.    By reason of the foregoing conduct, Fennell interfered with the Bank's business relations with certain of its customers, and willfully, purposefully, maliciously and oppressively caused general, special and consequential damages to the Bank in an amount to be proved at trial.

66.    As a direct and proximate result of Fennell's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION
### CONSPIRACY
### (ALL DEFENDANTS)

67.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 66 of the Complaint.

68.    Defendants formed an unlawful agreement to engage in the conduct set forth herein, including but not limited to, breaching their fiduciary duties to the Bank and interfering with the Bank's business relations.

69.    Defendants each agreed to participate and did participate in the conspiracy, in furtherance of their own financial gain.

15

70.    As a direct and proximate result of their conspiracy and acts taken in furtherance of the conspiracy, the Bank has been damaged in an amount to be proven at trial.

## PUNITIVE DAMAGES

71.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 70 of the Complaint.

72.    Because of the willful, wanton, vile, and intentional nature of Defendants' conduct as alleged herein, and their conscious disregard and abuse of a position of trust, Defendants are liable for punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Bank of Saipan prays for judgment against the Defendants as follows:

1.    General damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.    Punitive damages in an amount appropriate to punish Defendants and set an example to others;

3.    Disgorgement of all costs and fees paid by the Bank to the Defendants;

4.    An award of attorney's fees and costs incurred in this action; and

5.      For other such relief as the Court may deem proper.

Dated this 18th day of November, 2004.

MAIR, MAIR, SPADE & THOMPSON
CALVO AND CLARK, LLP
Attorneys for The Bank of Saipan, Inc.

By: _____
for    DAVID A. MAIR

## DEMAND FOR JURY TRIAL

The Bank of Saipan hereby demands a trial by jury of all issues triable of right by

jury.

Dated this 18th day of November, 2004.

MAIR, MAIR, SPADE & THOMPSON
CALVO AND CLARK, LLP
Attorneys for The Bank of Saipan, Inc.

By: _____
for    DAVID A. MAIR

I hereby certify that the foregoing hereof is a full true
and correct copy of the original on file in the Office
of the Clerk of Courts, Susupe, Saipan, Mariana Islands.

Date: 10/4/06

_____
CLERK OF COURT
NORTHERN MARIANA ISLANDS
SAIPAN, MP 96950

P042163.rtt

17

# EXHIBIT   C

# FDIC report revealed bank of Saipan's poor

By Ulysses Torres Sabuco
Variety News Staff

FIVE years ago, the Federal Deposit Insurance Corp. rejected Bank of Saipan's membership application, saying that the financial institution was in "poor over-all financial condition."

The bank's board of directors was made aware of the FDIC's findings, yet there was no action initiated either by the management of the bank or the board of directors, acting Commerce Secretary Fermin M. Atalig told Variety.

Some five years later, the bank's chairman of the board and chief executive officer, Tomas B. Aldan, was indicted—together with other individuals—for multi-million wire fraud.

"The FDIC application findings revealed the bank's problematic situation, but they did not act on the recommendation of FDIC's investigators—otherwise, the bank would not be in this mess," Atalig said.

Oscar C. Camacho, who was the banking commissioner in 1997, said the bank's board of directors withdrew the bank's FDIC application after receiving the findings of the federal agency.

He declined further comment.

Attorney David J. Lujan said he was not yet with the bank's board when the FDIC released its findings in 1997.

He said the current board of directors was not informed about the FDIC's recommendation.

"How [are we] supposed to follow a recommendation that [we] have not seen?" Lujan said.

He said Camacho and Atalig "do not know what they are talking about."

The FDIC's findings were "largely based on the financial status of the bank as of March 31, 1997.

The FDIC's examiners recommended the rejection of the bank's application, but allowed the bank to withdraw it.

The FDIC said the bank's asset quality as of March 31, 1997 was



Acting Commerce Secretary Fermin M. Atalig, right, confers with Oscar C. Camacho at the courthouse on Wednesday. The government is asking the court to name Camacho as the receiver of Bank of Saipan.
Photo by Ferdie de la Torre

unsatisfactory.

Almost half of the bank's loan portfolio was "past due."

The FDIC also noted $2 million in losses in the loan portfolio and other uncovered assets.

The FDIC findings said the "overwhelming cause" of the unsatisfactory asset quality was the absence of "prudent lending policies, procedures, and underwriting standards," leaving the management without any control over the bank's administration credit of the bank's credit function.

The FDIC also found the following:

• The bank's loan documents were poor, making it impossible to accurately assess collateral protection or repayment capacity.

• The bank's collection effort had been nonexistent or ineffective, while the credit card lending program had suffered a "disastrous consequence to the lack of basic credit controls."

• The bank was "structurally unprofitable. Its earnings had been "oversized" and there was failure to recognize operational losses in a timely manner.

• The bank lost $2 million during a six-month period ending March 31, 1997.

• There were "high overhead expense" that increasingly exceeded interest income as well as "exorbitant salary and personnel experiences."

• The bank had no "formal planning process" or an approved budget to guide and monitor its operating performance.

• The supervision of the bank was inadequate, and its senior management team needed to be strengthened.

• The bank's compliance with existing banks laws and regulations were also "unsatisfactory."

Aldan, indeed "lacked experience. Qualified individuals with banking expertise and experience" should be hired for the positions of president, senior lending officer and cashier.

## AGO reviewing recommendation to file charges

By Ferdie de la Torre
Variety News Staff

THE Attorney General's Office is reviewing all documents to determine if there are sufficient evidence to file criminal charges against certain major shareholders and directors of Bank of Saipan.

"Nothing is determined at this point, but obviously when there are criminal information filed that would bear the indication that we intend to prosecute—as of now," Attorney General Robert T. Torres said yesterday.

AGO is also reviewing the possible civil and administrative liabilities of the bank officials, he said.

"You can call it an ongoing investigation," he added.

Acting Secretary of Commerce Fermin M. Atalig informed the Variety that the directors on Tuesday that the AGO recommended the filing of criminal charges against certain major shareholders and directors.

Atalig cited B.D. Montgomery's $3.5 million purchase of stock from two of Bank of Saipan's major shareholders—the Calvos and ILH Pacific Trust.

Montgomery was among four persons later indicted in federal court for conspiring to defraud the bank of $6.6 million.

Atalig said the shareholders involved could be charged for unlawful concealment of transactions.

# EXHIBIT  D

HOME | NEWS | PRINT EDITION | RESOURCES | INDUSTRY JOBS | SUBSCRIPTIONS | CONTACT US | ADVERTISE

Search [                    ] [Go]                                              LOGIN

Advertisement 

## Article                                                    sponsored by  

### Stiff Sentences To Rigases for Massive 'Deceit'

By Linda Moss                                                6/27/2005

Digg This | add to Del.icio.us | RSS

**In this story:**
MICHAEL RIGAS TRIAL
MILLION-DOLLAR LINE

New York— Pleading with a judge for leniency last week, Adelphia Communications Corp. founder John Rigas slowly stepped up to a podium and offered a rambling soliloquy in which he denied any purposeful wrongdoing, reflected on his Greek immigrant background, mentioned his mother and grandchildren, and fondly recalled his life in the cable industry.

In a standing-room-only courtroom, the frail 80-year-old — about to be slapped with a stiff 15-year prison sentence for fraud and conspiracy — repeatedly made reference to his career as a cable-TV pioneer. Rigas talked about building Adelphia from scratch, on a shoestring.

"It was very difficult to have been involved in our business, starting with one customer, then two customers and being part of an evolution," Rigas told the ultimately unsympathetic U.S. District Court Judge Leonard Sand.

Rigas, once a pillar of the cable industry and now a pariah, said he was "privileged to have met some of the finest people in the corporate world," whom he called his "peers" and "heroes." He didn't name anyone specifically.

Rigas added that he was "blessed by the thousands of small communities" that had granted franchises to him. He thanked employees at Adelphia — which spiraled into bankruptcy protection in 2002, when off-the-books loans to the Rigas family were disclosed — for their part in building the MSO "from nothing," as he put it, to a "great" company.

The remarks of the elder Rigas and later, his 49-year-old son Tim, Adelphia's former chief financial officer, fell on deaf ears, as Judge Sand imposed stiff prison terms on both men: in addition to 15 years for the father, the son was sent to prison for 20 years.

So ended the most recent chapter in the three-year traumatic odyssey of Adelphia. The judge said that the Rigas pair's actions "culminated in one of the greatest frauds in corporate history."

The sentencing came nearly a year after the Rigases, symbols of white-collar crime, were convicted on 18 counts of conspiracy, securities fraud and bank fraud for taking out $2.3 billion in company loans, for which the MSO was liable, to buy Adelphia stock.

Last week, the judge likened the elder Rigas and Tim's actions at Adelphia — taking hundreds of millions of dollars of the company's funds for their own personal use — to a huge "Ponzi scheme," adding, "I think your intentions were to deceive the market and for a significant amount of time, you were successful in that deceit."

**MICHAEL RIGAS TRIAL**

The elder Rigas and Tim must report on Sept. 19 to start serving their sentences, but the story won't be over then.

Michael Rigas — John's other son and Adelphia's former executive vice president of operations — will go back to trial in October. Last year, he was found not guilty of conspiracy and fraud, but he must be retried on 15 other counts on which the jury was deadlocked.

Prosecutors maintain the Rigases made Adelphia their personal piggy bank. During the trial, there was testimony that John Rigas used Adelphia funds to buy Christmas trees and have them flown to New York for his daughter, and that money went for luxury condos and golf memberships for the family. Tim Rigas bought 100 pairs of slippers with company money and used the Adelphia corporate jet to pick up actress Peta Wilson for dinner dates.

Sand said he was levying a more lenient sentence on the elder Rigas because of his age and health issues, reportedly heart problems and bladder cancer. The judge said Rigas must serve at least two years, at which time, if prison authorities feel he's terminally ill with less than three months to live, they can apply for a sentence modification.

Rigas, who choked up while mentioning his grandkids, maintained his innocence at the sentencing.

"When it's all said and done ... in my heart and in my conscience, I'll go to my grave really and truly believing that I did nothing but try to improve conditions for my employees, their future, and the family," Rigas said. "For that I stand here accused of many horrible things, I can't deny that as the patriarch, mistakes were made."

He summed up by saying: "I can only close by saying if I did anything wrong, I apologize. I did the best I could to correct it. If that means I have to go to prison, it's not where I ever expected to be in life."

In turn, Tim Rigas also addressed the court. "Our intentions were good, the results were not so," he said.

But the judge wasn't buying it. "Even at this moment ... you say you made mistakes, you did nothing wrong," Sand said. "That's what is unacceptable."

**Talk Back**

There are no comments posted for this article.
Post a comment

**Related Articles**
Calif. City Drops Time Warner Complaint
Judge Sacks Adelphia Complaint
America Channel Sues to Block Adelphia Deal
No Jail for Michael Rigas
Judge Won't Throw Out Adelphia Settlement

of 3

11/16/2006 11:27 PM

Exhibit D

01

The judge noted that many of Adelphia's employees — about whom John Rigas said he was so concerned — had lost all their retirement money, which was in Adelphia stock, when the fraud led to the collapse of the company's shares.

The judge cited a letter the court had received from a 70-year-old woman who had expected to enjoy a "comfortable retirement, who now has to go to work every day."

Before both Rigases were sentenced, they were confronted by one of their former peers in the cable industry, when former Century Communications Corp. chairman Leonard Tow addressed the court.

He sold Century to Adelphia in 1999, and when Adelphia's stock crashed, he said, he lost $1.5 billion in sale proceeds that he had earmarked for charity, via his Tow Foundation.

He said the Rigases "robbed" ill children, "wayward teenagers," and cancer victims, who all would have benefited from that money.

Even if the pending sale of Adelphia to Time Warner Cable and Comcast Corp. is completed — and even with the Rigases agreeing to render a $715 million settlement to the Securities and Exchange Commission and the U.S. Department of Justice — "the [Adelphia] shareholders will likely receive nothing from the sale," Tow told the judge.

Last week, some of Adelphia's creditors — W.R. Huff Asset Management and the MSO's committee of unsecured creditors — filed separate appeals of a bankruptcy judge's approval of the $715 million settlement.

During the sentencing John Rigas's defense attorney, Peter Fleming, argued for leniency and disputed that his client had "looted" Adelphia.

"He sees himself as having acted in good faith for the benefit of the company," Fleming said.

MILLION-DOLLAR LINE

In response, the judge pointed out how the elder Rigas had been put on a $1 million "budget," or limit on the money he personally took out of the MSO's accounts for his own use, according to testimony during the trial last year.

Judge Sand also noted that Adelphia had to keep two sets of books — one with the cooked numbers that concealed the $2.3 billion of off-balance-sheet debt and another with the accurate Adelphia figures.

And while John Rigas was known for his charitable works in Adelphia's former home base of Coudersport, Pa., the judge noted that he was using "assets that weren't his" for that purpose.

"To be a great philanthropist with other persons' money is not very persuasive," Sand said.

Digg This | add to Del.icio.us | RSS

feedback      email to friend      print article

---

TALK BACK - Let Us Know What You Think!
POST A COMMENT

There are no comments posted for this article.

Other Breaking News

| | |
| --- | --- |
| iTunes to Tee Up Grand Slam | *Most Popular Stories* |
| Round Two in RCN Bidding | *Farscape* Latest Series to Bite Dust |
| House Not Home for EchoStar | Sci Fi's *Stargate SG-1* Said to Be Axed |
| FCC's McManus Joins Comcast | News Corp. May Launch YouTube Rival |
| HBO, AOL Prep Comedy Site | EchoStar Launches Huge Piracy Raid |
| CableNET to Turn 15 at The Cable Show | Comcast Plans a *TV Guide* on the Web |

Ads By GoogleTEST

Skilling Gets 24 Years
The New York Times reports on the former Enron executive's sentencing
www.nytimes.com

Mich. Collection Lawyers
Get your money quickly. Call toll free (888) 293-2682
www.creditorlaw.com

Compliance Training
Online e-learning courses to meet the FSA regulatory requirements
www.complinet.com

HOME | NEWS | PRINT EDITION | RESOURCES | INDUSTRY JOBS | SUBSCRIPTIONS | CONTACT US | ADVERTISE      LOGIN

© 2006 Reed Business Information, a division of Reed Elsevier Inc. All rights reserved.
Use of this web site is subject to its Terms and Conditions of Use. View our Privacy Policy.

11/16/2006 11:27 PM

Exhibit D

02

**Reed Business Information.**

**Reed Business Interactive Network**

Variety | 411 Publishing | New York 411 | Video Business | 4dot0 | Broadcasting & Cable | Multichannel News | Publishers Weekly | Library Journal | School Library Journal | Criticas | Tradeshow Week | EDN | Electronic News | Electronic Business | Design News | Test & Measurement World | Control Engineering | Plant Engineering | Semiconductor International | Semisource | Purchasing | Logistics Management | Industrial Distribution | Supply Chain Management Review | Modern Materials Handling | Manufacturing Business Technology | Consulting Specifying Engineer | Instal | Furniture Today | Home Textiles Today | Home Accents Today | Casual Living | Kids Today | Gifts & Decorative Accessories | Playthings | Interior Design | Jixs, Cixs, Keystone | Twice | Bldg Design & Construction | Construction Equipment | HousingZone | Professional Builder | Professional Remodeler | Associated Construction Publications | Reed First Source | RS Means | Reed Construction Data | Building Team Forecast | Reed Construction Bulletin | Reed Connect | Hotels | R&I | Chain Leader | Foodservice Equipment & Supplies | Packaging Digest | Graphics Arts Monthly | Graphics Arts Blue Book | Converting | OM2 | Zbb | Kellysearch | The Industry Measure |

11/16/2006 11:27 PM

Exhibit D

03



**NEWS & COMMENTARY:** TOP WORLDWIDE

- Top Worldwide
- Regions
- Markets
- Economy/Politics
- Commentary
- Sports
- Culture
- Bloomberg RSS
- Audio/Video Reports

**RESOURCES:**
- Bloomberg TV
- Bloomberg Radio
- Markets

## Top Worldwide

✉ E-Mail This Story    🖨 Printer-Friendly Format

### Adelphia Founder John Rigas Gets 15 Years; Son, 20 (Update7)

June 20 (Bloomberg) -- John Rigas, the 80-year-old founder of Adelphia Communications Corp., was sentenced to 15 years in prison and his son Timothy, the ex-finance chief, got 20 years, for looting the company and lying about its finances.

After John Rigas, who has cancer and a heart condition, serves two years of his sentence, the Bureau of Prisons can ask for a reduction if it concludes he has less than three months to live, U.S. District Judge Leonard Sand said. The judge, who presided over the trial in New York, ordered both Rigases to surrender to prison officials on Sept. 19.

The 15-year term for John Rigas, who was chief executive of Adelphia, the fifth-largest U.S. cable-television operator, is the stiffest for a CEO in a white-collar case since the 2001 collapse of Enron Corp. sparked a crackdown on corporate crime.

``If I did anything wrong, I apologize,'' said Rigas, speaking in a faint voice before the judge passed sentence. ``It's in your hands, and in God's hands. In my heart and conscience, I'll go to my grave really and truly believing that I did nothing but to improve conditions for my employees.''

Sand said Rigas had ``long ago'' set Adelphia ``on a track of lying, of cheating, of defrauding.'' He said he would have sentenced Rigas to a longer term if not for his age and poor health. Rigas faced a maximum of 215 years behind bars, effectively a life sentence.

`Other People's Money'

``One shrinks from, no matter how horrendous the crime, the prospect of someone dying in a prison hospital,'' Sand said.

Defense attorney Peter Fleming argued that many in Rigas's hometown of Coudersport, Pennsylvania, benefited from his charity. The judge was unmoved.

``What he did to Coudersport, he did with assets and by means that were not appropriately his,'' Sand said. ``To be a great philanthropist with other people's money is really not very persuasive.''

Kirby Behre, a former federal prosecutor, said that given the size of the fraud, estimated by prosecutors at almost $2 billion, John Rigas's sentence seemed like ``something of a discount.''

Behre said the sentence Timothy Rigas got ``would probably be more reflective of what his father would have gotten.''

Jeff Ifrah, co-author of Federal Sentencing for Business Crimes, said he expects John Rigas to die in jail.

Compassionate Release

``Unfortunately, for whatever reason, the Bureau of Prisons has been extremely inflexible with their compassionate release policy,'' said Ifrah, like Behre, a litigator at Paul Hastings Janofsky & Walker in Washington.

While Sand said prison officials may release Rigas after two years if his death appears imminent, ``I can tell you that they never do it,'' Ifrah said.



MORE NEWS

Clear Channel Agrees to $19 Billion Buyout by Bain, Thomas Lee, People Say

FBI Raids Municipal Brokers in Criminal Probe of Investment Bid-Rigging

Sears Holdings Profit Triples on Investment Gains; Sales Fall 2.5 Percent

Exhibit D

04

http://www.bloomberg.com/apps/news?pid=70000087&refer=top_wo...

Before his sentence was handed down, Timothy Rigas, 49, told the judge, ``Our intentions were good. The results were not so.''

Sand rejected that view. ``I think your intentions were to deceive,'' he said

As the proceeding got underway in Manhattan federal court this afternoon, one investor, Leonard Tow, 77, told Sand that the 27 million Adelphia shares he owned are now nearly worthless. He said he had planned on giving the $1.5 billion in stock to a foundation he established that works on behalf of sick children and juvenile offenders.

``The fraud at Adelphia has dealt a severe blow to these causes,'' Tow said. ``Investors must believe -- they must know -- the public information they rely upon is accurate and complete.''

Other CEOs

John Rigas's sentence doesn't bode well for other CEOs recently found guilty of fraud. WorldCom Inc.'s Bernard Ebbers, who was convicted in March, and Tyco International Ltd.'s L. Dennis Kozlowski, convicted on Friday, are awaiting sentencing. A Birmingham, Alabama, jury is weighing a verdict in the case of HealthSouth Corp.'s former CEO, Richard Scrushy.

John Rigas and his son Timothy were convicted last July of conspiracy, bank fraud and securities fraud. Prosecutors said the Rigases used Adelphia as their ``private ATM'' to provide $50 million in cash advances, buy $1.6 billion in securities and repay $252 million in margin loans.

John Rigas was Adelphia's CEO until his ouster in May 2002. Adelphia sought Chapter 11 bankruptcy protection in June 2002. Time Warner Inc. and Comcast Corp. agreed in April to buy most of Adelphia's assets for $17.6 billion.

Faced 215 Years

Both Rigases faced a maximum of 215 years in prison under federal sentencing guidelines. Lawyers for John Rigas, citing his bladder cancer and triple-bypass heart surgery in 1999, asked Sand to spare him a prison term.

They also cited the Rigas family's contributions to the rural economy of Coudersport, where John Rigas founded Adelphia more than half a century ago. The company has since moved to Greenwood Village, Colorado, in suburban Denver.

The Rigas family has agreed to repay victims of the fraud by forfeiting 95 percent of its assets, including several cable- television systems, real estate around the U.S. and company bonds with a face value of $567 million. The Rigases will keep assets valued at $45 million, including the family compound in Coudersport and two small cable systems nearby.

John and Timothy Rigas were convicted after a five-month trial in which jurors deadlocked on fraud charges against another son, Michael. Sand declared a mistrial, and Michael Rigas faces a second trial on Oct. 24. A fourth defendant, former assistant treasurer Michael Mulcahey, was acquitted on all counts.

Lied to Investors

Prosecutors said the Rigases lied to investors about Adelphia's financial condition from 1999 to 2002 as the company borrowed $9 billion to fund an acquisition spree and upgrade cable lines. Much of that money came from syndicated loans taken out jointly by Adelphia and Rigas-owned businesses. Prosecutors said those loans helped fund the Rigases' purchase of $1.6 billion in company stock and debt.

Adelphia shares plunged after the company disclosed on March 27, 2002, that it backed $2.3 billion in Rigas borrowings under the loans, including some to buy securities. Prosecutors say the Rigases used no cash to obtain $822 million in Adelphia stock and bonds, and they falsely said they paid with ``immediately available funds.''

The criminal case is U.S. v. Rigas, 02-CR-1236, U.S. District Court, Southern District of New York.

To contact the reporters on this story: David Glovin in U.S. District Court in New York at dglovin@bloomberg.net ; David Voreacos at dvoreacos@bloomberg.net .

Last Updated: June 20, 2005 17:39 EDT

Advertisement: Pioneer Investments Strength Across Asset Classes. Learn about Pioneer's range of funds.

Forex Trading Investing
Try a free practice account and learn how currency trading works!
www.ac-markets.com

SAP for Midsize Companies
SAP is for great companies, not just great big companies. Learn why!
SAP.com/midsize

Pay Too Much? Refi 200K for $641/Mo!
No points, free appraisal. No job? No assets?

11/16/2006 11:28 PM

Exhibit D

05

http://www.bloomberg.com/apps/news?pid=3...0000047&refer=top_wo...

Bad credit? No problem!
www.FastLenderQuote.com

©2006 Bloomberg L.P. All rights reserved.   Terms of Service   Privacy Policy   Trademarks
Site Map   Help   Feedback   About Bloomberg   Log In/Register   Advertising   ??????

11/16/2006 11:28 PM

Exhibit D

06

http://www.businessweek.com/technology/content/jul2005/tc2005071...

# BusinessWeek | online

TOP NEWS | BW MAGAZINE | INVESTING | ASIA | EUROPE | TECHNOLOGY | AUTOS | INNOVATION | SMALL BIZ | B-SCHOOLS | CAREERS

SEARCH SITE
Advanced Search

JULY 14, 2005
REPORTER'S NOTEBOOK
By Steve Rosenbush

## The Message in Ebbers' Sentence

**The ex-WorldCom CEO's 25-year stretch puts corporate crooks on notice. And it's sure to have prosecutors looking further up the food chain**

As Bernard Ebbers' trial got underway last March, the former WorldCom CEO strode confidently about the courthouse, cigar in mouth and hands on hips. But on July 13, Ebbers appeared a much-chastened man as he confronted his fate in the U.S. District courtroom of Judge Barbara Jones. The judge, a former prosecutor, sentenced the 63-year-old Ebbers to 25 years in prison.



STORY TOOLS
▶ Printer-Friendly Version
▶ E-Mail This Story

Sun } share

TODAY'S MOST POPULAR STORIES

1. The 25 Best Affordable Suburbs in the U.S.
2. Doug Parker Wants to Fly Delta
3. Now Boarding: Merger Mania
4. S&P Downgrades ABN Amro, ING, Telefonica
5. Can Daily Motion Challenge YouTube?

Get Free RSS Feed >>

POLL: INSTANT SURVEY >>
Mozilla's Firefox is gaining on Microsoft's Internet Explorer in the browser share battle. What's your favorite tool for browsing the Web?

○ Internet Explorer
○ Firefox
○ Safari
○ Opera
○ Netscape
○ Other

[GO] VIEW POLL RESULTS >>

MARKET INFO

| | | |
|---|---|---|
| DJIA | 12251.71 | +33.70 |
| S&P 500 | 1396.57 | +3.35 |
| Nasdaq | 2442.75 | +12.09 |

STOCK LOOKUP [GO]

Dow Hits Another Record After Fed News
Create / Check Portfolio
Launch Popup Ticker

BUSINESS DIRECTORY
Stop searching, start finding!

Accounting
Advertising & Marketing
Air Charter
Air Travel
Annuities
Antivirus / Antispam Solutions
POWERED BY DIRECTORY.M

PREMIUM CONTENT
MBA Insider

BW MAGAZINE
Get Four Free Issues
Register
Subscribe
Customer Service

ONLINE FEATURES
Book Reviews
BW Video
Columnists
Interactive Gallery
Newsletters
Past Covers
Philanthropy
Podcasts
Special Reports
BLOGS
Auto Beat
Bangalore Tigers
Blogspotting
Brand New Day
Byte of the Apple
Deal Flow
Economics Unbound
Fine On Media
Hot Property
Investing Insights
New Tech In Asia
NussbaumOnDesign
Tech Beat
Working Parents
TECHNOLOGY
J.D. Power Ratings
Product Reviews
Tech Stats
Wildstrom: Tech Maven
AUTOS
Home Page
Auto Reviews
Classic Cars

The weight of the proceedings appeared to take its toll on the one-time mogul, a former milkman, bouncer, and basketball coach who worked his way to the top of Corporate America. As he entered the courthouse in Manhattan, he pushed a photographer out of his way. Later, as Jones denied one appeal for leniency after another, Ebbers clasped his hands in front of him, as if in prayer. His face reddened, and he dabbed it with a tissue.

**FORGET THE EIGHTIES.** Ebbers waived his right to speak during the sentencing. But no words were necessary to convey his devastation. When Jones asked if he understood his right to appeal the sentence, he answered so softly that she could barely hear him, and he had to repeat his answer. After the sentence was pronounced, Ebbers' wife, Kristie, seated on a bench several seats behind him, cried. Ebbers hugged her as she sobbed on his shoulder a few moments later.

The ex-WorldCom boss is free on bail until Oct. 12. His attorneys hope to keep him out of jail until his appeal is resolved, but by no means is that assured.

It was the toughest sentence of its kind. No high-profile CEO has ever faced such a long prison term in a fraud case. John Rigas was sentenced last month to 15 years for defrauding Adelphia (ADELQ), the cable corporation that he ran. Rigas' son, Timothy, was sentenced to 20 years. And the sentences far outstrip those

PEOPLE SEARCH
Search for business contacts:
First Name :
Last Name :
Company Name :
[GO]

PREMIUM SEARCH
Search by job title, geography and build a list of executive contacts
SEARCH BY zoominfo

Tech White Papers
▶ Most Recent
▶ Most Popular

11/16/2006 11:58 PM

Exhibit D

07

Car Care & Safety
Hybrids
INNOVATION & DESIGN
Home Page
Architecture
Brand Equity
Auto Design
Game Room
SMALLBIZ
Smart Answers
Success Stories
Today's Tip
INVESTING
Investing: Europe
Annual Reports
BW 50
S&P Picks & Pans
Stock Screeners
Free S&P Stock Report
SCOREBOARDS
Hot Growth 100
Mutual Funds
Info Tech 100
S&P 500
B-SCHOOLS
Undergrad Programs
MBA Blogs
MBA Profiles
MBA Rankings
Who's Hiring Grads

BW EXTRAS
BW Digital
BW Mobile
BW Online Alerts
Dashboard Widgets
Podcasts NEW
RSS Feeds NEW
Reprints/ Permissions
Conferences
Research Services

handed down in the insider-trading cases of the 1980s.

"ISN'T SURPRISING." But everything about the WorldCom case has been outsized. During the late '90s, it emerged as one of the world's largest telecom companies. It traces its roots to LDDS, a small company that bought long-distance service in the wholesale market from AT&T and resold it under its own name at a discount. LDDS grew by acquisition, taking a new name from an acquired company called WorldCom. It created an enormous market cap that allowed it to acquire MCI, a pioneer of telecom competition, for $47 billion in 1998.

At its peak, WorldCom had revenues of $40 billion a year and sold telecom and Internet services to consumers and businesses globally. It eventually admitted to a record $11 billion in accounting fraud. Its $107 billion bankruptcy filing in 2002 was the largest in history. The company, which has emerged from bankruptcy under the MCI name (MCIP ), is being sold to Verizon Communications (VZ ).

Peter Henning, a law professor at Wayne State University, says that the Ebbers sentence was a little longer than he would have expected, but only by about five years. "In light of the Rigas sentences, the Ebbers outcome isn't surprising," he notes. Judges like to be consistent, Henning says, and Jones obviously wanted to send a strong message that accounting fraud is unacceptable.

The blowup of WorldCom already has changed the business climate in the U.S., according to Henning. Outrage over the fraud was a prime factor in passage of the Sarbanes-Oxley Act, which increased regulation of U.S. companies. It also helped lead to a new separations between investment bankers and their research departments.

PERSONAL TOLL. The case shows that CEOs can't escape responsibility for accounting scandals that happen on their watch by blaming underlings. Henning believes the sentencing will embolden prosecutors to go higher up the corporate ladder than they might have in the past.

Legal experts say the sentence was tough but fair, given the enormous amount of damage that investors suffered. "It's an extremely stiff sentence, but I think it's fair, given the magnitude of the harm, the egregiousness of the crime," says securities attorney Michael Missal of Kirkpatrick & Lockhart Nicholson Graham. Missal was lead counsel to the examiner in the WorldCom bankruptcy case. He also represented Michael Milken after Milken's release from prison.

The human cost of the WorldCom case was highlighted in court Wednesday morning when a former salesman urged the court to impose a tough sentence. Ex-employee Henry Bruen Jr., 47, said he lost $800,000, including his home. Bruen says he was a top salesman, but now can't find work because he has been tainted by the WorldCom scandal. He sold his apartment and lives with his parents in White Plains, N.Y.

Continued on next page>> |1|2

---

BW MALL SPONSORED LINKS

- **Custom Configured Business Hosting Solutions** Rackspace offers fully managed dedicated servers on the Linux and Windows Platform with a 100% Network Uptime Guarantee and 24/7 Fanatical Support. Learn more about our Hosting Solutions and how Rackspace can reduce your costs.

- **Make Your Business Intelligence Actionable** Start Using Your Business Intelligence Today. Download the "Making Intelligence Actionable: Business Process Management and Business Intelligence" Solutions Brief

- **BTinet - Complete Server Hosting Solutions** BTinet server hosting - Windows/Linux, Dell/Sun, Oracle and more. Services to help you succeed.

- **The premier tool for Help Desk management and CRM** Vital IT information you need to tackle your biggest IT issues, all in ONE PLACE! From help desk tickets, asset auto discovery, auditing systems, reporting stats and more. Get a free demo here!

- **SAP America President/CEO Bill McDermott** Learn about Bill McDermott, President and CEO, SAP Americas.

Buy a link now!

Exhibit D

08

# BusinessWeek online

SEARCH SITE
[          ] GO
Advanced Search

TOP NEWS | BW MAGAZINE | INVESTING | ASIA | EUROPE | **TECHNOLOGY** | AUTOS | INNOVATION | SMALL BIZ | B-SCHOOLS | CAREERS

JULY 14, 2005
REPORTER'S NOTEBOOK
By Steve Rosenbush

## The Message in Ebbers' Sentence
[Page 2 of 2]

The Executive Book Summaries

BUSINESS DIRECTORY

Stop searching,
start finding!

Accounting
Advertising &
Marketing
Air Charter
Air Travel
Annuities
Antivirus / Antispa...
Solutions
POWERED BY DIRECTORY M

PREMIUM CONTENT
MBA Insider

BW MAGAZINE
Get Four Free Issues
Register
Subscribe
Customer Service

ONLINE FEATURES
Book Reviews
BW Video
Columnists
Interactive Gallery
Newsletters
Past Covers
Philanthropy
Podcasts
Special Reports
BLOGS
Auto Beat
Bangalore Tigers
Blogspotting
Brand New Day
Byte of the Apple
Deal Flow
Economics Unbound
Fine On Media
Hot Property
Investing Insights
New Tech In Asia
NussbaumOnDesign
Tech Beat
Working Parents
TECHNOLOGY
J.D. Power Ratings
Product Reviews
Tech Stats
Wildstrom: Tech Maven
AUTOS
Home Page
Auto Reviews
Classic Cars

"WASN'T JUST EBBERS." "I represent the common man...the working professional...and the average investor that has suffered untold human carnage financially, personally, and professionally as a result of the criminal activities of Bernard Ebbers and his co-conspirators," he told the court. Bruen says many WorldCom employees shared his fate.



Speaking to reporters in the hallway outside the courtroom, just moments after the sentencing, Bruen expressed satisfaction with the results, saying, "It sends a message."

But another former employee was taken aback by the sentence. "It wasn't just Ebbers," says former WorldCom sales executive Glenn Klupsak, who sat through the entire trial. Klupsak, who left WorldCom in 1998 – well before the accounting fraud at issue in the indictment began – says his stock options were rendered worthless and that he suffered "seven-figure" losses.

He maintains WorldCom's advisers and bankers at Salomon Brothers, including former telecom analyst Jack Grubman, should have shared the blame. "They were responsible, too," Klupsak says.

**PLEA FOR MERCY.** As for the sentence, it far outstripped anything that Klupsak expected. "I thought it would be closer to 10 years," Klupsak says. Was 25 years for Ebbers fair? "I don't know," said the stunned ex-employee, just moments after his former boss was sentenced.

Ebbers lead attorney, Reid Weingarten, says he looks forward to appealing the verdict and the sentence. Weingarten, who has known Ebbers for years, shed tears as he pleaded with the judge to show mercy. He noted that Ebbers was in poor health, suffering from a heart condition, and that he had made $100 million in anonymous charitable donations over the years. "Doesn't that count for anything...for anything?" he asked.

Get 4 FREE Issues!

STORY TOOLS
▶ Printer-Friendly Version
▶ E-Mail This Story

Sun | share

POLL INSTANT SURVEY >>
Mozilla's Firefox is gaining on Microsoft's Internet Explorer in the browser share battle. What's your favorite tool for browsing the Web?
○ Internet Explorer
○ Firefox
○ Safari
○ Opera
◉ Netscape
○ Other
GO  VIEW POLL RESULTS >>

PEOPLE SEARCH
Search for business contacts:
First Name :
[          ]
Last Name :
[          ]
Company Name :
[          ]
GO

PREMIUM SEARCH
Search by job title, geography and build a list of executive contacts
SEARCH BY


Tech White Papers
▶ Most Recent
▶ Most Popular

TODAY'S MOST POPULAR STORIES
1. The 25 Best Affordable Suburbs in the U.S.
2. Doug Parker Wants to Fly Delta
3. Now Boarding: Merger Mania
4. S&P Downgrades ABN Amro, ING, Telefonica
5. Can Daily Motion Challenge YouTube?

Get Free RSS Feed >>

MARKET INFO
DJIA      12251.71   +33.70
S&P 500   1398.57    +3.35
Nasdaq    2442.75    +12.09

STOCK LOOKUP [     ] GO

Dow Hits Another Record After Fed News
Create / Check Portfolio
Launch Popup Ticker

Exhibit D

09

Car Care & Safety
Hybrids
INNOVATION
& DESIGN
Home Page
Architecture
Brand Equity
Auto Design
Game Room
SMALLBIZ
Smart Answers
Success Stories
Today's Tip
INVESTING
Investing: Europe
Annual Reports
BW 50
S&P Picks & Pans
Stock Screeners
Free S&P Stock Report
SCOREBOARDS
Hot Growth 100
Mutual Funds
Info Tech 100
S&P 500
B-SCHOOLS
Undergrad Programs
MBA Blogs
MBA Profiles
MBA Rankings
Who's Hiring Grads
BW EXTRAS
BW Digital
BW Mobile
BW Online Alerts
Dashboard Widgets
Podcasts
RSS Feeds
Reprints/ Permissions
Conferences
Research Services

The judge didn't flinch when it came time to pronounce sentence. She said that under federal guidelines, Ebbers ought to receive 30 years in prison. But she took five years off the sentence because of several factors, including Ebbers' charitable activities.

A POSTER BOY?  Given his age and health, however, it's probably a meaningless gesture, considering that there's a good chance Ebbers will die in prison. Jones's only concession: She'll make it easier for him to wind up in a low-security prison in Yazoo, Miss., near his home. Given the length of the sentence, he could have ended up in a medium-security facility.

Weingarten addressed the press outside, at the foot of the court house's imposing steps. Surrounded by a mob of reporters, Weingarten told them that Ebbers continues to proclaim his innocence. "The problem with this case is that Bernard Ebbers was transformed into a symbol of greedy, corrupt executives," the lawyer said.

Prosecutors were under immense pressure to bring charges because so many members of the public lost money. WorldCom's value in the stock market declined by $187 billion, or 90% of its value. And on the way down, it wiped out the life savings of employees and investors, and hurt major investors such as Merrill Lynch (MER ), Oppenheimer Capital, and the College Retirement Equities Fund. Rivals such as AT&T and Verizon also complained that WorldCom forced them to compete against an unattainable, phantom benchmark of success, distorting the entire telecom industry.

BUCK STOPS HERE.  Working with little direct evidence, a prosecution team led by David Anders convinced the jury to find Ebbers guilty despite the testimony of tainted witnesses like former WorldCom CFO Scott Sullivan (see BW Online, 03/16/05, "Ebbers: Giant Fraud, Simple Conclusion").

Anders seems to have swayed Jones as well. Weingarten argued until the end that Sullivan was really the main culprit. But Jones brushed aside that argument on the day of sentencing, saying, "It seems quite clear to me Mr. Ebbers was central to the criminal activity in this case." And her point was driven home in a record-breaking sentence that surely could send a message to every CEO in America.

| 1 | 2 |  <<previous page

Rosenbush is a senior writer for BusinessWeek Online in New York

BW MALL  SPONSORED LINKS

* SAP for Midsize Companies  SAP is for great companies, not just great big companies. Learn why!

* Guaranteed Mailing Lists  Guaranteed List, we are your guaranteed source for mailing and telemarketing lists. Our lists are 100% guaranteed. For a free, no obligation list recommendation and price quote, call us toll free.

* Plug and Play Accounting Software  Mid-range accounting software for your busy company. Simplify installation and maintenance with Couger Mountain Software on a dedicated server.

* G.Neil: Your HR Resource  Tools to manage and motivate people: labor law, forms, safety, software and more.

* Remote Access - Remote PC  Remote PC offers secure remote access to your desktop from anywhere with an internet connection. Great for mobile professionals and office to home connectivity. Free trial for 30 days!
Buy a link now!

Get BusinessWeek directly on your desktop with our RSS feeds.

Add BusinessWeek news to your Web site with our headline feed.

Click to buy an e-print or reprint of a BusinessWeek or BusinessWeek Online story or video.

To subscribe online to BusinessWeek magazine, please click here.

Learn more, go to the BusinessWeekOnline home page

Exhibit D

10

BACK TO TOP

Copyright 2005, by The McGraw-Hill Companies Inc. All rights reserved.
Terms of Use | Privacy Notice

Media Kit | Special Sections | MarketPlace | Knowledge Centers

The McGraw-Hill Companies

Exhibit D

11



homepage |

**real** live TV  News
greengrass live TV
▶ tvext live TV

news
latest bulletin
business
europa

interview
europeans
pass
agora
europinion
parlamento

le mag
comment
no comment
space
hi tech
futuris
terra viva
agenda

weather

feedback
company
the team
jobs
mobile
contact
EU coverage
advertising
links
help

Business location
guide



Business Directory
Avant Go
Real Player

terms and
conditions

deutsch |english| español |français| italiano |português| русский

16 November 2006

**USA**
**Ex-Enron director sentenced to 24 years in jail**

The former boss of Enron, Jeffrey Skilling, has been sentenced to 24 years in prison for his part in the United States' biggest ever corporate scandal. He was found guilty in May of 19 counts of conspiracy, fraud, insider trading and lying to auditors. Legal experts said Skilling, 52, was expected to be given a sentence of between 20 and 30 years.

Under Skilling, Enron became the world's largest energy trading firm, with a market value of more that 55 billion euros. His co-defendant, Enron's founder Kenneth Lay, died from heart disease in July. Juries found the pair had orchestrated a series of financial schemes to try and hide the true picture of the company's finances.

When it went bankrupt five years ago, 21,000 people lost their jobs. Pension funds, worth an estimated 1.5 euros, were wiped out. The sentencing hearing heard from a dozen former Enron employees, investors and customers.

more...

**Video** French Socialists vote for presidential candidate
**Video** German court toughens 9/11 ruling
**Video** Bush calls on Asia to "send message" to North Korea
**Video** Joseph Kabila wins D.R. Congo presidential poll
**Video** Spiral of retaliation between Israel and Palestinians
**Video** US soldier pleads guilty to Iraq rape, murder

Sponsored links

**Endowment Compensation Claims at Endowment Claims**
Failing endowment? Are you eligible for compensation? Find out and make an online claim now. No win, no fee. If we are unsuccessful, we'll take your claim to the Financial Ombudsman.

**Selling Your Endowment Policy? Visit Us Today**
BestPriceEndowment is a great place to sell endowment policies. Fantastic prices are being paid today. See how much more we can offer for your policy.

**Expert Endowment Compensation Advice**
Oasis Financial Services compensation claims. If your endowment is facing a shortfall then you may be entitled to compensation. £500 million paid out in compensation already. No win no fee.

Exhibit D

12

FindLaw | For the Public | For Small Business | For Legal Professionals | Find a Lawyer

# FindLaw
Legal News and Commentary

HOME  ACCIDENTS & INJURIES  BANKRUPTCY & DEBT  CRIMINAL LAW  IMMIGRATION  LABOR & EMPLOYMENT  REAL ESTATE  LEGAL NEWS  MORE TOPICS

Search Public  Go!

Commentary  Business  Civil Rights  Crime  Immigration  Labor  Personal Injury  Product Liability  Supreme Court

---

WAR ON TERROR
IRAQ COVERAGE
Search News

Monday, Oct. 23, 2006

Print This | Email This

THOMSON
DIALOG

**News Front Page**
Business
Civil Rights
Crime
Environment
Immigration
Labor
Personal Injury
Politics
Product Liability
Supreme Court
Tech & IP
Commentary
International
Entertainment
Sports
Book Reviews
Weather
News Wires
Andrews Publications
Associated Press
Court TV
Washington File
The Spin Room
Featured Docs
Special Coverage

## Former Enron CEO Skilling sentenced to 24 years, 4 months

By JUAN A. LOZANO Associated Press Writer

(AP) - HOUSTON-Former Enron CEO Jeffrey Skilling, the most vilified figure from the most notorious financial scandal of the decade, was sentenced Monday to 24 years, four months in prison, the harshest sentence yet in the case that came to symbolize corporate fraud in America.

He was the last top former official to be punished for the accounting tricks and shady business deals that led to the loss of thousands of jobs, more than $60 billion (â‚¬47.8 billion) in Enron stock and more than $2 billion (â‚¬1.6 billion) in employee pension plans when Enron collapsed.

Skilling, 52, stood alone at his sentencing before U.S. District Judge Sim Lake; his co-defendant, Enron founder Kenneth Lay, died July 5 and his convictions were vacated last week.

Skilling's term is the longest received by any Enron defendant; former chief financial officer Andrew Fastow was given a six-year term after cooperating with prosecutors and helping them secure Skilling's conviction.

The former CEO's arrogance, belligerence and lack of contriteness under questioning made him a lightning rod for the rage generated by the collapse of Enron in 2001. Lake handed down the sentence after outraged former Enron employees spoke at the hearing.

2006-10-23T20:06:17Z

Copyright 2006
The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

FindLaw's Writ

Pelosi's Earmark Proposal
How It Fits A Trend Of Democrats Turning Republican, And Vice-Versa, When It Comes to Spending
By MARCI HAMILTON

AND Guest Scott Gerber On Michigan's New Anti-Affirmative Action Act As An Example Of Popular Constitutionalism

Coming Friday:
Columnist John W. Dean

AND Contributor Carl Tobias On Congress's Lame Duck Session And The Federal Courts

Legal Technology

Managing Insider Data Security Risks
By ERIC SINROD

Featured Documents

Couple Indicted For "Overt Sexual Activity" On Airline Flight
[HTML File]

Britney Spears' Divorce Petition Against Kevin Federline
[HTML File]

Class Action Lawsuit Over Brazilian Airplane Crash
[HTML File]

Coach Indicted For Lying To Feds About BALCO Steroid Scandal
[HTML File]

Va. Sheriff, Deputies Accused Of Selling Guns, Drugs
[HTML File]

Prominent Sports Agent Indicted for Smuggling Cuban Baseball Players

11/17/2006 12:07 AM

Exhibit D

13

# EXHIBIT E

**Subject:** Re: USA v. Montgomery
**From:** Timothy Moran <tmoran2003@yahoo.com>
**Date:** Sun, 8 Oct 2006 22:49:40 -0700 (PDT)
**To:** George Anthony Long <gal@nmilaw.com>
**CC:** Tim Moran <timothy.e.moran@usdoj.gov>

Anthony:

Parenthood the second time around is even better. We're having a great time. And thanks for your patience.

I will stipulate to a re-sentencing. I'm going to file a written response since the judge asked for one, regarding our position on the issues, if any. I will represent that the government stipulates to the defendant's request for resentencing and you can indicate the same thing in your filing.

Tim

***George Anthony Long <gal@nmilaw.com>*** wrote:

> How's parenthood the second time around?
>
> We previously discussed, without resolution, whether the government
> will stipulate to re-sentencing in this case. Please advise if you
> will stipulate to re-sentencing.
>
> --
> George Anthony Long
> Logal
> P.O. Box 504970
> Saipan, MP 96950
> Tel: (670) 235-4802
> Fax: (670) 235-4801

---

Do you Yahoo!?
Get on board. You're invited to try the new Yahoo! Mail.