LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorney
DISTRICT OF THE NORTHERN
  MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP  96950
Telephone:  (670) 236-2982
Fax:           (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 02-00010 |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MEMORANDUM |
| | ) | REGARDING RE-SENTENCING |
| v. | ) | |
| | ) | |
| BERT DOUGLAS MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorney, and hereby submits its memorandum regarding the re-sentencing of defendant Bert Douglas Montgomery.  The government maintains that the Court found the correct Guidelines level and issued a reasonable and appropriate sentence.  Accordingly, the government requests that the Court decline to resentence Montgomery or affirm Montgomery's existing sentence.  In addition, to resolve potential issues on appeal, the government requests that the Court take this opportunity to clarify and augment its findings with respect to certain aspects of the Sentencing Guidelines calculation.

I.  BACKGROUND

In Montgomery's original appeal, he challenged certain aspects of the court's Guidelines calculation for improperly shifting the burden of proof and absence of findings beyond a reasonable doubt under <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) and <u>United States v. Ameline</u>, 376 F.3d 971 (9th Cir. 2004) ["<u>Ameline I</u>"].  Those aspects included: the 18 level enhancements to the fraud and money laundering base offense levels pursuant to U.S.S.G. § 2D1.1; the four level enhancements for Montgomery's leadership role pursuant to § 3B1.1(a); the two level enhancement to the money laundering group for sophisticated means pursuant to § 2S1.1(b)(3); the two level enhancements for obstruction of justice pursuant to § 3C1.1; and the four level enhancement to the fraud group for jeopardizing the safety and soundness of a financial institution pursuant to § 2B1.1(b)(12)(B). Montgomery also appealed the two level enhancement that resulted from placing the fraud and money laundering charges in separate groups.  In the interim, the Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220 (2005).  The Court of Appeals then issued its first decision, which affirmed the grouping enhancement but did not specifically rule on the other Guidelines challenges.  Instead, it remanded the case pursuant to <u>United States v. Ameline</u>, 409 F. 3d 1073 (9th Cir. 2005) (*en banc*) ["<u>Ameline II</u>"].

This Court declined to re-sentence Montgomery in a written order of August 29, 2005, indicating that it might well have sentenced him more harshly had the Guidelines been advisory.  Montgomery appealed that order.  In his second appeal, he argued that he should have been allowed to submit his views in writing on the issue of re-sentencing, that the Guidelines calculation was incorrect, and that the Court failed to consider properly the 18 U.S.C. § 3553(a) factors.  With regard to the Guidelines calculation, he objected to the enhancements for leadership role, sophisticated means of money laundering, obstruction of justice, and jeopardizing the safety of a financial institution and the amount of money laundered.  The government countered that Montgomery had not raised those issues in his prior

appeal, to the extent that he exceeded Blakely objections, and that he exceeded the scope of the remand. Furthermore, the government continued to argue that the sentence was reasonable in all respects.

The Court of Appeals remanded this case on the sole issue that the Court did not solicit the views of counsel before declining to re-sentence Montgomery. The Court of Appeals expressly declined to resolve the other issues that Montgomery raised in his second appeal, including whether they had been waived because they had not been argued on the first appeal. However, at oral argument, the panel questioned the attorneys about the Guidelines calculation, especially whether the Court's findings were sufficient to support the enhancement for obstruction of justice. Accordingly, the government requests that the Court take this opportunity to clarify and augment certain findings to foreclose Montgomery's potential appeal number three.

II.    THE GUIDELINES CALCULATION WAS CORRECT.

In light of the Supreme Court's decision in Booker and Ninth Circuit's decision in Ameline II, the Court properly found the Guidelines level by a preponderance of the evidence. 409 F.3d at 1089.

A.    The Court Should Clarify Its Findings With Respect To Obstruction Of Justice.

The Pre-Sentence Report found two bases for application of this enhancement: Montgomery's false statements to the FBI on March 8, 2002 and his perjured trial testimony. PSR at ¶ 58. The Court found by a "preponderance of the evidence that the defendant lied to the FBI, that the material that he lied about was material information that obstructed justice." [Sentencing Transcript ["STr."] at 112]. The enhancement is applicable to both the fraud and money laundering groups on either ground, although they require different findings of fact.

The PSR identified two types of false statements to the FBI on March 8, 2002: flase denials of his involvement in the loan transactions and false statements concerning his wealth. FBI Agent Hewitt testified in detail about Montgomery's false statements, including most notably his false claim to own the UFX account. [Trial Transcript ["Tr.] 1575-97]. In addition, the testimony of Lee Francia, Michael Wilson, and David Murakami confirmed that Montgomery lied in his FBI interview about his

3

1  involvement in the Swevern Systems loan, his wealth, and personal background. The Court correctly
2  found that Montgomery thereby lied.   To qualify for the enhancements, the false statements must result
3  "in a significant hindrance to the investigation or prosecution." United States v. Solano-Godines, 120
4  F.3d 957, 963 (9th Cir. 1997). It is not entirely clear that the Court found that the false information
5  resulted in a hindrance to justice. Accordingly, the government requests a finding of fact that
6  Montgomery's lies of March 8, 2002, hindered his investigation and prosecution.

7  In addition, the PSR included several examples of Montgomery's perjured trial testimony,
8  including: (1) falsely denying that he had learned from Darren Smith that UFX investors had not
9  authorized sending money to Saipan; (2) falsely blaming James Nava for sending the UFX funds to
10 Saipan; and (3) falsely describing his marriage as a "friendship ceremony." [PSR ¶ 58]. Although these
11 false statements need not impede an investigation or prosecution, the Court must make other findings by
12 a preponderance of evidence. Specifically, the Court must find that "(1) the defendant gave false
13 testimony under oath (2) concerning a material matter (3) with the willful intent to provide false
14 testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Jimenez,
15 300 F.3d 1166, 1170 (9th Cir. 2002), citing United States v. Dunnigan, 507 U.S. 87, 94 (1993). The
16 evidence at trial amply supports each element by a preponderance of the evidence. Accordingly, the
17 government requests findings of fact that Montgomery testified falsely, concerning material matters,
18 with willful intent.

19  B.    The Court Should Confirm The Rest Of The Guidelines Calculation.
20  The government requests that the Court adopt the findings of fact and the Guidelines calculation
21 in the Amended PSR. Specifically, the government requests that the Court find that the government met
22 its burden with regard to the enhancement for substantially jeopardizing the safety and soundness of a
23 financial institution, found in the PSR at ¶ 48. In addition, the government requests that the Court
24 confirm that it calculated the total amount of laundered funds as set forth in the PSR at ¶ 72, specifically
25 $2.8 million, consisting of wire transfers of $1.8 million on November 28, 2001 [Count Seven];

4

$300,000 on December 4, 2001 [Count Eight]; and $700,000 on December 10, 2001 [Count Nine]. [Tr. 4730-31]. As part of the jury's verdict, this finding was beyond a reasonable doubt.

III.   THE SENTENCE WAS REASONABLE AND SHOULD BE AFFIRMED.

The Court's sentence of 240 months was reasonable. Ameline II, 409 F.3d at 1074-75. The Court has the discretion to re-sentence Montgomery to as many as 100 years' imprisonment, the maximum potential sentence permitted by statute.[1] More significantly, the Court's sentence is within – in fact, near the low end – of the Guidelines range at level 38 of 235 to 293 months. The facts of this case amply demonstrate that the Court correctly assessed Montgomery's crimes: a cold, calculating scheme which caused "direct injury to thousands of bank depositors" and massive financial losses. [Order After Limited Remanded Denying Sentencing].

None of Montgomery's previous arguments that the sentence is unreasonable have any merit. The Court previously considered his age, lack of a criminal record, diabetes, and lack of profits from his crimes as the PSR noted each of these factors, [PSR ¶¶ 88, 89, 91, 107, 114], and Montgomery argued each of them at sentencing. [S.Tr. 57, 52-53]. In fact, Montgomery requested but was denied a downward departure on account of his age. [S.Tr. 55]. Accordingly, as the Court previously considered these factors, they provide no reason to disturb its reasonable exercise of discretion; in fact, the Court should make it clear that the sentence might have been higher if not for them.

Furthermore, the Court should not consider any new information or arguments regarding what the sentence should have been at the time. As Montgomery argued in his second appeal, the Court should not base its decisions on the conditions which may have arisen since the original sentencing. United States v. Menyweather, 431 F.3d 692 (9th Cir. 2005). This is only logically, as the issue for the

---

[1] Group One consists of one count of conspiracy to commit wire fraud and three substantive wire fraud counts, each with a maximum statutory penalty of five years, totaling twenty years. 18 U.S.C. §§ 371, 1343. Group Two consists of one count of conspiracy to commit money laundering and three substantive money laundering counts, each with maximum statutory penalties of twenty years, totaling 80 years. 18 U.S.C. § 1956. The combined total is 100 years.

5

1  Court to decide is whether it would have sentenced differently, had it known that the Guidelines were
2  advisory at the time that it rendered sentence.
3  　　　In short, the Court followed the proper procedure and reached a reasonable result at the original
4  sentencing. To revisit that sentence now would erode confidence in judicial proceedings and merely
5  invite additional, frivolous litigation. The Court should affirm its original sentence of 240 months'
6  imprisonment.
7  IV.　　CONCLUSION
8  　　　The government leaves it to the Court's discretion whether to convene a full sentencing hearing
9  or to issue a written ruling, as <u>Ameline II</u> permits. However, in any event, the government respectfully
10 requests that the Court augment and clarify its findings as specifically noted and affirm its prior,
11 reasonable, 240 months' sentence.

　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　LEONARDO M. RAPADAS
　　　　　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　　　　　Districts of Guam and the NMI

Dated: November 20, 2006         By:    __/s/_____
　　　　　　　　　　　　　　　　　　　　　　　TIMOTHY E. MORAN
　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney